Copeechan Fish and Game Club, Appellant *v.* Zoning Hearing Board of North Whitehall Township, Appellee.

Argued October 7, 1977, before Judges ROGERS and BLATT, sitting as a panel of two.

*Oldrich Foucek, III,* with him *Robert J. Johnson,* and *Butz, Hudders & Tallman,* for appellant.

*Michael J. Piosa,* Worth Law Offices, P.C., for appellee.

OPINION BY JUDGE ROGERS, October 28, 1977:

The Copeechan Fish and Game Club (Club) has appealed an order of the Court of Common Pleas of Lehigh County affirming the denial by the Zoning Hearing Board of North Whitehall Township (Board) of the Club's application for a special use exception.

The Club owns a thirty-three (33) acre tract of land located in the S-C Conservation Zoning District of North Whitehall Township where uses are permitted only by special exception. Among such permitted activities are "recreational uses."

The Club has used a single trap shotgun range on its land since 1950. It here sought a special exception to construct three additional trap houses at a place about 150 yards from a residential development. The proposed new location is much closer to the residential development than the existing single trap shotgun range. The Zoning Hearing Board, after hearing, denied the application on two grounds; first, that the

proposed use by reason of noise would be detrimental to the public health, safety and welfare; and second, that the new trap range would "cause or create a nuisance to adjoining properties or the general neighborhood." The Club appealed the Board's action. The court below which was not asked to, and did not, receive additional evidence concluded that the Board had not abused its discretion or committed an error of law. We agree and affirm.

Judge DAVID E. MELLENBERG wrote for the court below:

> The Board agreed that the proposed trap range was a 'recreational use' . . . and that The Club had successfully brought itself within this provision which accords the right to proceed by Special Exception. The burden of proving that a Special Exception Application constitutes a detriment to the public health, safety, or welfare of the community then shifts to the objectors. [*Lower Merion Township v. Enokay, Inc.*, 427 Pa. 128, 233 A.2d 883 (1967); *Accord, Delaware County Community College Appeal*, 435 Pa. 264, 254 A.2d 641 (1969); *Zoning Hearing Board v. Konyk*, 5 Pa. Commonwealth Ct. 466, 290 A.2d 715 (1972); *Cherbel Realty Corp. v. Zoning Hearing Board*, 4 Pa. Commonwealth Ct. 137, 285 A.2d 905 (1972).] The Board found that the objectors had met their burden and that the proposed trap range would constitute a nuisance to the adjoining residential area.
>
> The Club contends initially that The Board abused its discretion in finding that the objectors met their burden and in denying The Club's application.
>
> As no additional evidence has been presented, the scope of our review is not whether in the

first instance we would have reached a different determination, but whether The Board abused its discretion or committed an error of law. Haverford Twp. v. Zoning Hearing Board of Haverford Twp., 21 Pa. Cmwlth, 207, 344 A.2d 758 (1975); Rubin v. Upper Southampton Twp. Zoning Hearing Board, 19 Pa. Cmwlth. 469, 338 A.2d 773 (1975); Radnor Twp. v. Falcone, 16 Pa. Cmwlth. 283, 328 A.2d 216 (1974); Amerada Hess Corp. v. Zoning Hearing Board of Adjustment, 11 Pa. Cmwlth. 115, 313 A.2d 787 (1973); Phila. v. Earl Scheib Realty Corp. 8 Pa. Cmwlth. 11, 301 A.2d 423 (1973).

After reviewing the evidence presented to The Board, as well as the briefs and arguments of counsel before this Court, we conclude that The Board did not abuse its discretion or commit an error of law.

A review of the evidence presented initially to the Zoning Board reveals that the proposed three shotgun trap range would be considerably closer to residential uses than the existing one shotgun trap range. Additionally, there is no buffer between the proposed range and the residential area. Only an open field separates the two areas.

The Club proposes to plant a row of trees along Brook Road to serve as a buffer to absorb the sound from the range. This buffer would consist initially of a row of trees three to four feet high, but if the trees will be an effective buffer to the anticipated noise, they will be only after a considerable period of time when the row of trees reach growth maturity.

The Club's testimony indicates that much heavier use of the trap ranges could be anticipated

on Saturdays and Sundays. Trap Shooting League Meets would be held on Sundays on the proposed range with as many as eighty-eight (88) persons competing between the hours of 8:00 A.M. and 4:00 P.M. This anticipated heavy weekend use of the proposed range coincides with that portion of the week when most of the protesting residents in the area use their homes and yards for purposes of recreation and relaxation.

That the noise from the anticipated use of the proposed trap range would be annoying and disturbing to the surrounding residents and disruptive of the use of their homes is amply demonstrated by testimony at the Board hearing.

Mrs. Ruth Williams, an objector at the hearing before The Board, testified: 'That [the single trap shotgun range] is a good distance from my home, and I must admit that I hear that very loud and clear.' With reference to a Turkey Shoot previously held at the [nearer] site of the proposed range, Mrs. Williams further testified: 'We sat there, and instead of a nice, leisurely Sunday dinner and enjoying the country and the fresh air coming in my front door and windows, I was listening to a lot of loud noise and a lot of shooting. It was loud. There are no two ways about it.'

When asked about the present noise level of the shooting range, Mr. Ronald Krause, another objector, testified: 'Well, it's awful loud, like a war.' In response to the question of whether or not the noise interfered with the use of his property, Mr. Krause stated: 'Well, it does in a respect. You know, Saturday and Sunday is the only days that most people have

off, and to listen to a bunch of shooting on Saturday and Sunday, it's obviously not what people want.'

Excessive noise and its affect upon the surrounding residential area provide a sufficient basis for the denial of a special exception. In William Chersky Joint Enterprises v. Board of Adjustment of the City of Pittsburgh, 426 Pa. 33, 231 A.2d 757 (1967), the Supreme Court upheld the denial of a special exception solely on the basis of noise and stated at page 38:

'The Board of Adjustment found that the noise now produced by appellant's operations is a source of great disturbance and discomfort to the inhabitants of the surrounding residential area. It further found that extension of the hours and days of operation would aggravate the existing disturbances to adjoining residents, and that the requested change for extension, if permitted, would be more detrimental to the adjoining residential neighborhood than the existing use of the structure.'

In Kotzin v. Plymouth Township Zoning Board of Adjustment, 395 Pa. 125, 149 A.2d 116 (1959), the Supreme Court denied the applicant's request for a special exception primarily on the basis of noise and its impact upon the surrounding neighborhood. In that case the applicant sought a special exception to use his land as a non-commercial recreational swimming club and a day camp. The court stated at page 129:

'The influx of such a great number of patrons (1200 swimming club members and 150 day camp children) would cause congested traffic, induce noise, disturb the quiet and peacefulness

of the neighborhood and so infringe upon its tranquility that the objectives of the comprehensive zoning plan would be jeopardized and the health, safety and general welfare of the whole neighborhood adversely affected.'

The Club says that since recreational uses are permitted as special exceptions and since trap shooting is recreational and since noise is an expected product of trap shooting, the Board may not refuse a special exception because of noise, citing *Archbishop O'Hara's Appeal,* 389 Pa. 35, 131 A.2d 587 (1957). The Club misreads *Archbishop O'Hara's Appeal, supra,* and other Pennsylvania cases following in its wake. The rule of *Archbishop O'Hara's Appeal* is not that the expected consequences of uses permitted by special exception must be disregarded in determining whether health and safety are affected, but rather that protestants must show to a high degree of probability that the proposed use will substantially affect the health and safety of the community. The record here establishes to a high degree of probability that the noise of the Club's new trap shooting range will substantially and detrimentally affect the health and safety of the community.

A section of the North Whitehall Township Zoning Ordinance provides that no special exception for hunting, fishing, gunning or other similar recreational purposes should be allowed as a special exception unless the Zoning Hearing Board determines that such use will not create a nuisance or hazard to adjoining properties. The Zoning Hearing Board, in addition to declaring that the proposed trap shooting range would adversely affect the health and safety of the community, also determined that it would be a nuisance because the noise would cause annoyance and discomfort to the neighbors in the legitimate enjoyment of the reasonable use of their properties. The Club says

that nuisance principles have no place in zoning and that a use permitted by a Zoning Ordinance may not be forbidden by a Zoning Board because the Board believes that it will be a nuisance to neighbors. The court below did not decide this question because it sufficed that the Club lost on the issue of health and safety.

It is true that *Peirce Appeal*, 384 Pa. 100, 119 A.2d 506 (1956), holds that a Zoning Board is without jurisdiction to determine that a property owner's nonconforming use is a nuisance which should be abated and for this reason to deny an application for a reasonable extension of the use. The circumstances of the instant case are quite different. Here the supervisors to whom the power to create standards for the granting of special exceptions has been delegated have determined that with respect to "gunning or other similar recreational use" one standard shall be that the use not be a nuisance or hazard to adjoining properties. Read as requiring protestants to show to a high degree of probability that the proposed use will create a nuisance or hazard, we find nothing wrong with this standard. The health and safety standard refers to public or, at best, community health or safety. We see no reason in the law why a special exception should not be required to be denied if adjoining property owners can prove to a high degree of probability that the use will be a nuisance, as the law defines nuisance, to them. They clearly so proved in this case.

Affirmed.

### Order

And Now, this 28th day of October, 1977, the order of the court below, dated September 23, 1976, is affirmed.