Thomas Heck, Appellant *v.* The Zoning Hearing Board for Harveys Lake Borough, Pennsylvania, Appellee.

Argued September 28, 1978, before Judges MEN-CER, BLATT and CRAIG, sitting as a panel of three.

*Richard S. Kempes,* with him *Allan M. Kluger,* and *Hourigan, Kluger & Spohrer, Assoc.,* for appellant.

*Santo A. Agati,* for appellee.

OPINION BY JUDGE BLATT, January 8, 1979:

Thomas Heck (appellant) has appealed to this Court from an order of the Court of Common Pleas of Luzerne County, which affirmed the denial of his application for a special exception by the Zoning Hearing Board of Harveys Lake Borough (Board).

The appellant owns a parcel of shoreline property in the borough of Harveys Lake zoned S-1. On the property is a one-story structure containing a storage/entertainment area and having a height of approximately eight feet, which is approximately two feet above the level of the adjacent road. The appellant proposes to erect a second-floor game room on top of this structure, which would make the height of the structure approximately seventeen feet, or approximately eleven and one-half feet above the adjacent road level. Because the maximum height permitted in a district zoned S-1 is one story or twelve feet, he sought a special exception under Section 4.220 of the Harveys Lake Borough Ordinance (Ordinance), which provides in part:

In any district other than the R-1 or R-2 Districts, a building may be permitted to exceed the height limit of the district where it is to be located, and be erected up to a height of not more than 6 stories or 75 feet, whichever is

less, provided that it can be shown that adequate fire protection will be available, and that such modification shall be approved by the Zoning Hearing Board upon the review and approval of the Planning Commission only in accordance with the procedures established for the approval of a Special Exception.

The Board denied the exception because (1) it determined that Section 4.220 was not applicable to the S-1 district, and (2) it found that the special exception would be against the best interests and welfare of the community. The Court of Common Pleas sustained the position and reasoning of the Board, and this appeal followed.

Initially we note that the lower court took no additional evidence, and our scope of review, therefore, is limited to determining whether or not the zoning board abused its discretion, committed an error of law, or made findings not supported by substantial evidence in the record. *McCarron v. Zoning Hearing Board,* 37 Pa. Commonwealth Ct. 309, 389 A.2d 1227 (1978).

The first issue raised is whether or not the Board was correct in its ruling that Section 4.220 of the Ordinance is not applicable in the S-1 district. The Board's position is that Section 4.220 is rendered inapplicable here by Section 2.400, which provides as follows:

    a. Those uses permitted in a S-1 Zone are the most restrictive.

    b. All other uses are less restrictive in the order they are permitted in the zones in the sequence shown: S-1R, R-1, R-1A, R-2, R-3, C-1, C-2, C-3 and M-1.

    c. Where a use is specifically enumerated in a less restrictive zone, such use shall not be permitted in a more restrictive zone unless it

is specifically enumerated as a permitted use therein.

Because height exceptions are permitted uses in districts less restrictive than R-1 and R-2, the Board argues, they cannot be a permitted use in the most restrictive district, S-1, unless they are "specifically enumerated as a use therein." In fact, the schedule for the S-1 district does not indicate that height exceptions are permitted uses; therefore, the Board concludes, height exceptions are not allowed in the S-1 district. With this reasoning we cannot agree.

The language of Section 4.220 is clear that, except in R-1 or R-2 districts, a building may exceed height limitations, provided that the specified procedure is followed. Also, under Section 1933 of the Statutory Construction Act of 1972 (Act), 1 Pa. C.S. §1933,[1] specific provisions control over general ones, and here Section 4.220 is more specific. In addition, under Section 1934 of the Act, 1 Pa. C.S. §1934, when two clauses in the same statute are irreconcilable the later in order of date or position prevails. Again Section 4.220 of the Ordinance controls because it is later in position. Finally, we note that an ambiguity or conflict in a zoning ordinance should be resolved in favor of the landowner. *See Desousa v. Zoning Hearing Board*, 19 Pa. Commonwealth Ct. 367, 339 A.2d 650 (1975); *Warminster Township v. Kessler,* 16 Pa. Commonwealth Ct. 67, 329 A.2d 316 (1974). *See also* R. Ryan, Pennsylvania Zoning Law and Practice §§4.2.4 and 4.2.5 (1970). We are not unsympathetic to the Board's argument that the appellant's interpretation would permit six-story or 75-foot structures in the S-1 shoreline district; however, the remedy for this

---

[1] The rules of statutory construction are applicable to statutes and ordinances alike. *Appeal of Neshaminy Auto Villa Ltd.*, 25 Pa. Commonwealth Ct. 129, 358 A.2d 433 (1976).

situation lies in amending the Ordinance rather than in accepting the Board's tenuous interpretation of it.

The second issue raised is whether or not the proposed special exception would be against the best interests and welfare of the community. At the outset we note that a special exception is not an exception to a zoning ordinance but a use which is permitted unless, under the circumstances, such use would adversely affect the community, *Brunner v. Zoning Hearing Board*, 12 Pa. Commonwealth Ct. 109, 315 A.2d 359 (1974), and once an applicant for a special exception proves that the proposed use is a permitted one the burden falls upon a protestant to prove that the use would constitute a detriment to public health, safety, or welfare, *Copeechan Fish and Game Club v. Zoning Hearing Board*, 32 Pa. Commonwealth Ct. 415, 378 A.2d 1303 (1977). In the instant case the Board's conclusion that the requested special exception would be against the best interests and welfare of the community was based on the following three findings:

a. The Board has determined that the petitioner intends to use the addition as living quarters and a dwelling—a use which is not permitted by the ordinance (See Article III, Schedule III—Principle [sic] Use);

b. There is inadequate parking for the expanded use;

c. The view of the lake will be reduced by erecting this addition.

The appellant argues that the first finding is unsupported by the evidence because he repeatedly stated during the hearing before the Board that his intention was *not* to use the structure as living quarters. The Board justified its finding by citing several other statements by the appellant which it contends indicate or imply that the structure would be used as

living quarters overnight.[2]   We think however, that the statements were at best ambiguous and that the circumstances here are close to those in *DeChristoforo v. Philadelphia Zoning Board of Adjustment,* 427 Pa. 150, 233 A.2d 561 (1967), in which our Supreme Court found an abuse of discretion in the board's determination that the property owner intended a use other than that to which he had testified.   We believe, therefore, that the Board's finding in this regard is not supported by substantial evidence in the record. Moreover, as we said in *Al Monzo Construction Co. v. Monroeville Borough,* 5 Pa. Commonwealth Ct. 97, 101, 289 A.2d 496, 498 (1972), the fact that a property owner may possibly intend to put his property to a use that is contrary to the zoning law is not reason to prohibit otherwise lawful construction activity on such property.   If, therefore, the exception the appellant seeks here is lawful, the Board cannot deny it on the basis that he may at some future time put the enlarged structure to an unlawful use.   If improper use does occur, appropriate action can then be taken.

As to the second finding, we do not believe it to be a valid reason for denying the special exception

---

[2] The statements of the appellant were made in the following context:

Q.   Would you be there to supervise when this facility is in use, you or your wife, or some adult?

A.   I wouldn't have any objection to our 16 or 18 year old boy being there to go water skiing. They wouldn't be staying overnight without an adult being there.

. . . .

Q.   You have kitchen facilities in there now?

A.   Well there is a sink, a refrigerator and a hot plate.

Q.   Any chance that in an emergency, that could be used for a weekend holiday?

A.   It definitely could be.

Q.   It could conceivably be used as such?

A.   Yes.

He also referred to the structure at one point as "my dwelling."

in this case. We fail to see how an addition to the top of the existing structure can affect the adequacy of the parking space around it. In addition, the appellant testified that he now had space for parking four cars, and although the Board's calculations of available space cast some doubt on this contention, the zoning ordinance does not clearly specify how many parking spaces are required for a structure such as the appellant's.[3]  Moreover, the Board did not find that the appellant was presently in violation of any parking space provisions.[4]  We do not believe, therefore, that the Board can base its denial here on the lack of adequate parking "for the expanded use."

The third finding of the Board, that the view of the lake would be blocked, is based on the testimony of three protesting residents and on the appellant's own admission that the proposed addition would block the view of the lake from the road for a 20-foot span. This reduced view of the lake was evidently considered by the Board to be contrary to the interest of the community in preserving the scenic beauty of the lake. The question is, however, whether such concern for scenic beauty is a sufficient basis for denial of the special exception. We think not. While this Court has observed that the concept of general welfare of a community in zoning matters includes a consideration of aesthetics, *County of Fayette v. Holman*, 11 Pa. Commonwealth Ct. 357, 315 A.2d 335 (1973), we have also declared that aesthetics alone cannot support a determination that the general welfare of a community would be adversely affected by

---

[3] The Ordinance does mandate two parking spaces "for each family or dwelling unit."

[4] The Board did observe that "the parking must be very close to the roadway, thereby creating a potential traffic hazard." Based on the evidence on the record, however, we can only consider this as conjecture.

the granting of a special exception, *Soble Construction Co. v. Zoning Hearing Board*, 16 Pa. Commonwealth Ct. 599, 329 A.2d 912 (1974).

A third issue, while not addressed by the Board, was raised by the court below and argued by the parties before this Court. It referred to whether or not procedural requirements of Section 4.220 of the Ordinance had been met and this section directs that exceptions to the height requirement "shall be approved by the Zoning Hearing Board upon review and approval of the Planning Commission. . . ." The appellant here submitted the subject modification to the Planning Commission, but the Commission did not give its approval because one member did not vote on the question and the other two came to different decisions. The appellant argues that requiring the *approval* of the Planning Commission is an unlawful delegation of the Board's power in zoning cases and we agree. Under the Pennsylvania Municipalities Planning Code (MPC), a planning agency is intended to have advisory power only,[5] and it is the zoning hearing board which is to hear and decide requests for special exceptions.[6] We believe, therefore, that

---

[5] Section 105 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10105, provides in part:

It is the further intent of this act that any recommendation made by any planning agency to any governing body be advisory only.

*See also* Section 209.1 of the MPC, added by the Act of June 1, 1972, P.L. 333, 53 P.S. §10209.1 (powers and duties of planning agency).

[6] Section 913 of the MPC, 53 P.S. §10913, provides in part:

Where the governing body in the zoning ordinance, has stated special exceptions to be granted or denied by the board pursuant to express standards and criteria, the board shall hear and decide requests for such special exceptions in accordance with such standards and criteria.

an ordinance which conditions approval of a special exception on the *approval* of a planning agency is to that extent invalid, for it is then in effect precluding an independent judgment by the Board which the MPC requires to decide the case.

The order of the Court of Common Pleas is reversed.

ORDER

AND Now, this 8th day of January, 1979, the order of the Court of Common Pleas of Luzerne County in the above-captioned matter is hereby reversed, and the Zoning Hearing Board for Harveys Lake is directed to grant Thomas Heck's application for a special exception.