# Farmland Industries, Inc. v. The City of Reading Zoning Hearing Board

*Robert T. Miller,* for plaintiff.
*Calvin Lieberman,* for defendant.

ESHELMAN, W.R., *J.*, December 30, 1982 — Farmland Industries, Inc., t/a Turkey Hill Minit Markets (hereinafter Farmland), applied for a special permit (also referred to as special exception), under City of Reading Zoning Ordinance to install a customer self service gasoline dispenser as part of a planned construction and operation of a convenience grocery store. The site involved is zoned C-3 Neighborhood Commercial. A permit for the grocery store was granted, but the application for special permit for the gasoline dispenser was denied by The City of Reading Zoning Hearing Board (hereinafter zoning board). Farmland appealed and the appeal was sustained by this court which re-

versed the decision of the zoning board and ordered that the special permit be granted. The City of Reading has appealed to the Commonwealth of Pennsylvania. Hence this memorandum opinion.

. Grocery stores are among the permitted uses in a C-3 Neighborhood Commercial Zone under the applicable ordinance, Section 508.1, and motor vehicle service stations are among the permitted uses by special permit under Section 508.2. Also, Section 809.9 provides: "For motor vehicle service stations, all fuel pumps shall be at least twenty feet from any street or property line and shall be attendant operated."

· The issues in the case are whether Farmland's proposed self service gasoline dispenser is "attendant operated" as required by zoning ordinance Section 809.9 and otherwise qualifies for a special permit, and whether said section as interpreted and applied by the zoning board is in conflict with Pennsylvania State Police regulations and is therefore unenforceable.

As reflected by the record, Farmland's proposal is for operation of a gas pumping island with a unit dispensing three gasoline products supplied by three underground tanks with submersible pumps. An employee attendant of Farmland is stationed at a console in the checkout area of the store where he controls the turning on and off of the pumps providing pressure for dispensing gasoline by the customer at the island. The attendant at the console visually observes the customer and is in voice communication with the customer by intercom speaker at all times. When the customer at the island takes the handle of the nozzle off the dispenser and flips the lever the attendant is alerted by beeper, whereby the attendant, conditions being proper, presses the button on the console to start the pump and he

tells the customer the pump is ready. The customer places and holds the nozzle in the gas tank of his vehicle and presses the nozzle latch to allow for the flow of gasoline. The nozzle is not equipped with a sustaining latch but the customer must maintain hand pressure on the latch to allow for the continuing flow of gasoline into the tank. The latch cannot be set for later automatic shutoff but shuts off as soon as the hand pressure on the nozzle latch is released by the customer. The attendant at the console can turn off the pump at any time to stop the flow of gasoline. When the customer hangs up the nozzle on the dispenser the system deactivates, and the next customer must go through the same procedure to have the pump activated to obtain gasoline.

At the zoning board hearing Farmland offered into evidence its "Attended Self-Service Station" permit (Exhibit 7) issued by the Pennsylvania State Police for the installation and operation of the self service dispenser in question. This permit was issued by the Fire Marshal's Division of the Pennsylvania State Police under regulations adopted by the Pennsylvania State Police pursuant to Section 1 of the Act of April 27, 1927, P.L. 450, as amended, 35 P.S. §1181. The applicable regulations are located at 37 Pa. Code §13.115 and provide, inter alia, as follows:

"§13.115. Attended self-service stations.

"(a) Approved special dispensing devices such as, but not limited to, coin operated, card operated, and remote preset types are permitted at service stations, if there is at least one qualified attendant on duty while the station is open to the public. The primary function of the attendant shall be to supervise, observe and control the dispensing of flammable or combustible liquids while such liquids are being dispensed. The attendant shall prevent the

dispensing of Class I liquids into portable containers that do not comply with the provisions set forth in §13.111 (relating to storage and handling), control sources of ignition, and immediately handle accidental spills and fire extinguishers if needed.

"(b) The attendant or supervisor on duty shall be capable of performing the functions and assuming the responsibilities covered in this section.

"(c) Emergency controls, including main power shut off switch or switches, shall be installed at a location not more than 15 feet from the principal control location of the attendant and not more than 100 feet from the dispensers.

". . .

". . .

"(f) The dispensing operations shall at all times be in clear view of the attendant, and placing or permitting any obstacle between the dispensing operation and the attendant so as to obstruct the view of the attendant is prohibited.

"(g) At all times during the dispensing of flammable or combustible liquids, the attendant shall remain within arms length distance of the remote control facilities at the principal location.

"(h) A voice communication system such as, but not limited to, an intercom system so as to allow direct voice communication at all times between the person dispensing flammable or combustible liquids and the attendant, shall be required.

". . ."

There is no dispute that under normal operating conditions the customer, and not the attendant, inserts the hose nozzle into the tank and starts and stops the flow of gasoline into the tank by the hand pressure latch on the nozzle provided the pump has been turned on and maintained in an on position by the attendant, and that unless circumstances ne-

cessitate otherwise the attendant will not be physically present at the island but will be located at the console control in the checkout area of the store. There is also no dispute that Farmland's proposed operation is in compliance with State regulations under which the necessary permit has been issued to Farmland. However, the zoning board nevertheless concluded that Farmland's proposed operation does not comply with ordinance Section 809.9 which provides that fuel pumps be "attendant operated," and the zoning board stated as its reason in the discussion portion of its decision that "This Section specifically requires that an employee be physically present in the immediate vicinity of the fuel pumps and further be available to physically dispense gasoline to customers" (p.6). We disagree. The wording of the section in question requires nothing of the sort. The term "attendant operated" is not defined but the wording is general and not at all specific. "That being the case, the term must be taken in the broadest sense so as to accord the applicant the benefit of the least restricted use and enjoyment of his land." Cook v. Marple Tp. Zoning Hearing Board, 55 Pa. Commw. 535, 540, 423 A.2d 1105, 1107 (1980). "It is fundamental that restrictions imposed by zoning ordinances are in derogation of the common law and must be strictly construed: [cases cited]. Such restrictions must not be so construed as to fetter the use of land by implication. The permissive widest use of the land is the rule and not the exception, unless specifically restrained in a valid and reasonable exercise of the police power." Fidler v. Zoning Bd. of Adjustment, 408 Pa. 260, 265, 182 A.2d 692, 695 (1962).

The zoning board also states in its discussion that "The type of operation for the retail sale of gasoline contemplated by the applicant is prohibited in any

zoning district within the City of Reading" (p.6), but then states that "The Board is also aware of the fact that there are a number of other similar gasoline sales operations within the City of Reading" (p.7). The evidence in the case established that there are in fact 22 such self service stations being operated in the city.

We conclude that the zoning board was in error in its interpretation and application of sec. 809.9, and that Farmland's proposed operation meets the requirement of being "attendant operated" under sec. 809.9.

Having met the requirements of sec. 809.9, Farmland is entitled to a special permit unless there is sufficient competent evidence to support a finding that Farmland's proposed usage would be detrimental to the public health, safety, and welfare, and the burden of showing such detriment is placed upon any objectors including The City of Reading. Bray v. Zoning Board of Adjustment, 48 Pa. Commw. 523, 410 A.2d 909 (1980). As defined in Heck v. Zoning Hearing Board for Harvey's Lake, 39 Pa. Commw. 570, 575, 397 A.2d 15, 18 (1979) " . . . a special exception is not an exception to a zoning ordinance but a use which is permitted unless, under the circumstances, such use would adversely affect the community."

No evidence to support a finding of injury to the public interest was presented nor did the zoning board decision point to any zoning ordinance standards (aside from its erroneous interpretation of the wording of sec. 809.9) supporting a conclusion that Farmland's proposed usage would adversely affect the community. On the contrary, Farmland presented extensive evidence that experience has shown that the type of proposed usage is a safe operation and involves less hazard than having an em-

ployee attendant physically present in the vicinity of the island and dispensing the gasoline into a vehicle tank by use of the customary sustaining latch allowing for a continuing flow of gasoline while such attendant absents himself from the nozzle to clean the windshield, check the oil or motor, serve other customers or be otherwise removed from the dispensing nozzle. We therefore conclude that there is no evidence that the proposed self service usage would be injurious to the public interest.

The second and related issue for consideration is whether sec. 809.9 as interpreted and applied by the zoning board is unenforceable as being in conflict with the aforementioned State Police regulations. We conclude that the zoning board's attempt to allow, within the same C-3 Neighborhood Commercial Zone, a gasoline service station with attendant physically present in the vicinity at the island to physically dispense gasoline to the customer, but to disallow a gasoline service station providing for customer self service dispenser with an attendant controlling the pump from a nearby console, creates a conflict between the ordinance and state police regulations. See Sears v. Bensalem Twp. Supervisors, 10 D. & C. 3d. (1979).

Section 11.4(c) of the applicable state police regulations, 37 Pa. Code §11.4(c), provides as follows:

"This subpart applies throughout this Commonwealth, except in Philadelphia County and Allegheny County, and does not supersede any additional regulations or requirements not in conflict with this subpart promulgated pursuant to authority of law by any political subdivision. If any of the provisions of this subpart are in conflict with any regulation or requirement promulgated by any political subdivision listed above, this subpart shall be applicable."
It is clear that the State regulations have preempted

the regulation of gas station usage under consideration. The interpretation and attempted application of ordinance sec. 809.9 by the zoning board does not constitute a mere addition to the state regulations, as was the case in Open Pantry Marts v. Commonwealth, 37 Commw. 423, 391 A.2d 20 (1978), but is tantamount to a prohibition of the very use which is clearly authorized by the state regulations. Section 809.9 is therefore unenforceable as interpreted and sought to be applied by the zoning board.

The argument briefs presented by the parties raised a third issue of whether the zoning board acted improperly because of failure to give adequate notice and because of acting without a quorum, but the parties at the time of argument agreed to withdraw this issue from consideration. Also, although the city amended its zoning ordinance provisions applicable to gasoline stations after Farmland's application was filed and prior to the zoning board decision, the zoning board's consideration and disposition was made under the provisions of the ordinance in effect prior to the amendment.

We conclude that Farmland is entitled to a special permit.