Vineyard Oil and Gas Company, :
                Appellant :
                             :
            v. :
                             :
North East Township :
Zoning Hearing Board :
                             :
            v. :
                             : No. 665 C.D. 2018
Capital Telecom Holdings, LLC : Argued: February 11, 2019


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                   HONORABLE ANNE E. COVEY, Judge (P.)
                   HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION BY
JUDGE COVEY                           FILED: July 31, 2019

Vineyard Oil and Gas Company (Objector) appeals from the Erie County Common Pleas Court's (trial court) April 16, 2018 order affirming the North East Township (Township) Zoning Hearing Board's (ZHB) decision granting Capital Telecom Holdings, LLC's (Applicant) variance and special exception application (Application). There are three issues before this Court: (1) whether the ZHB erred as a matter of law by concluding that Applicant's evidence was sufficient to satisfy the requirements under the Pennsylvania Municipalities Planning Code (MPC)[1] and the Township Zoning Ordinance (Ordinance) for a dimensional variance; (2) whether the ZHB erred as a matter of law by concluding that Applicant's evidence was sufficient to satisfy the Ordinance requirements for a special exception to erect a self-supporting cell tower structure in lieu of a monopole structure for cell tower

---

[1] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

antennas; and (3) whether the ZHB erred as a matter of law by finding that the Telecommunications Act of 1996 (TCA)[2] supported the grant of the dimensional variance and special exception.[3]

Applicant is a limited liability company that operates within the Commonwealth of Pennsylvania (Pennsylvania) and constructs, owns, and manages wireless communications facilities in Pennsylvania and elsewhere. Objector owns real property located at 10299 West Main Street, North East, Pennsylvania, which is directly adjacent to the north of the property owned by Jacob R. Jones (Jones) located at 10325 West Main Street, North East, Pennsylvania (Property). The Property, which consists of 5.58 acres and contains a salvage yard, septic tank, gas well and an automobile repair business, is located in the Township's B-2 Industrial District and, under the Ordinance, a wireless communications facility is a use permitted therein.

Jones also owns adjacent real property to the south and southwest of the Property. On September 19, 2016, Jones and Applicant entered into an Option and Telecommunications Facility Lease Agreement (Agreement). Under the Agreement, Jones leased a portion of the Property to Applicant for the purpose of erecting and operating a wireless communications facility thereon.

Pursuant to the Ordinance, if a new antenna support structure is erected in the Township, the minimum distance between its base and any adjacent property

[2] 47 U.S.C. §§ 151-624.

[3] Objector includes two additional issues in its Statement of Questions Involved: (1) whether the trial court abused its discretion by concluding that Applicant's evidence was sufficient to satisfy the unnecessary hardship requirement; and (2) whether the trial court erred as a matter of law in failing to recognize that a substantial burden must attend all dimensionally compliant uses of the property, not just the particular use the owner chooses. *See* Objector Br. at 3-4. Because Objector's third and fourth issues are subsumed in this Court's analysis of the first and second issues, they have been combined therein.

Objector incorrectly references the trial court's alleged errors in its issues before the Court. However, because the trial court did not take additional evidence, the proper standard of review is whether the ZHB erred. *See Marshall v. City of Phila.*, 97 A.3d 323 (Pa. 2014).

must be equal to the maximum height of the antenna and antenna support structure. *See* Section 1106.1(E) of the Ordinance. In addition, although a monopole antenna support structure is ordinarily required, the ZHB may approve the use of a freestanding support structure where the applicant can establish the existence of certain additional requirements. *See* Section 1106.1(F) of the Ordinance.

On July 6, 2017, Applicant submitted the Application to the ZHB, therein requesting a variance from the Ordinance's setback requirements and for the construction of a freestanding antenna support structure in lieu of a monopole support structure. According to the Application, Applicant proposed to construct a 195-foot tower designed to accommodate collocation by other telecommunications carriers and emergency services. Since the Ordinance ordinarily requires the base of the proposed tower to be placed at a distance of at least 195 feet from adjoining properties, Applicant sought approval for the following distances between the proposed tower's base and the adjoining properties: 54 feet, 4 inches to the north; 132 feet, 4 inches to the south; 113 feet, 5 inches to the east; and 114 feet, 3 inches to the southwest. Thus, Applicant sought dimensional variances of 140 feet, 8 inches to the north; 62 feet, 8 inches to the south; 81 feet, 7 inches to the east; and 80 feet, 9 inches to the southwest. In addition, Applicant expressed its intent to provide access/utility easement to the Property, and have the proposed tower surrounded by a fenced compound wherein all associated equipment would be installed.

On August 22, 2017, the ZHB conducted a hearing at which Applicant presented expert testimony from Verizon Wireless' Radio Frequency Engineer Matt Wierzchowski (Wierzchowski) who related the details of the Application. Applicant also presented the testimony of Jones, Applicant's representative Scott Von Rein (Von Rein), and site acquisition specialist Rich Hanson (Hanson). In addition, the ZHB called Township Zoning Officer Russ LaFuria (LaFuria) to testify. Objector's attorney cross-examined Applicant's witnesses and raised objections, but presented

no evidence. At the conclusion of the hearing, the ZHB unanimously voted in favor of granting the Application.

On October 6, 2017, the ZHB issued its decision. Objector appealed to the trial court on October 27, 2017.[4] On March 28, 2018, the trial court held oral argument. By April 16, 2018 opinion and order, the trial court affirmed the ZHB's decision. Objector appealed to this Court.[5] On May 15, 2018, the trial court ordered Objector to file a Pennsylvania Rule of Appellate Procedure 1925(b) statement of errors complained of on appeal (Rule 1925(b) Statement). Objector filed its Rule 1925(b) Statement on June 4, 2018. On June 28, 2018, the trial court filed its opinion in response thereto.

Objector first argues that Applicant's evidence was insufficient to satisfy the requirements under the MPC and the Ordinance for a dimensional variance.

Initially, Section 1106.1(E) of the Ordinance provides:

Setbacks from Base of Antenna Support Structure

If a new antenna support structure is constructed (as opposed to mounting the antenna on an existing structure), the minimum distances between the base of the support structure or any guy wire anchors and any property line or right-of-way line shall be equal to the maximum height of the antenna and antenna support structure.

Reproduced Record (R.R.) at 402a (Ordinance § 1106.1(E)). With respect to a variance therefrom, Section 703 of the Ordinance governs:

---

[4] Applicant filed a notice of intervention.

[5] Where "the trial court d[oes] not take any additional evidence, an appellate court is limited to determining whether the zoning board committed an abuse of discretion or an error of law in rendering its decision." *Marshall v. City of Phila.*, 97 A.3d 323, 331 (Pa. 2014). "We may conclude that the zoning board abused its discretion only if its findings are not supported by substantial evidence, which we have defined as 'relevant evidence which a reasonable mind would accept as adequate to support the conclusion reached.'" *Id.* (quoting *Twp. of Exeter v. Zoning Hearing Bd. of Exeter Twp.*, 962 A.2d 653, 659 (Pa. 2009)).

In accordance with the [MPC], the [ZHB], shall hear requests for variances where it is alleged that the provisions of this Ordinance inflict unnecessary hardship upon the applicant. The [ZHB] may grant a variance provided the following findings are made where relevant.

703.1

That there are unique physical circumstances or conditions including irregularity, narrowness or shallowness of lot size or shape, or exceptional topographical or other physical condition peculiar to the particular property or use, and that unnecessary hardship[6] is due to such conditions and not the circumstances or conditions generally created by the provisions of the [] Ordinance in the neighborhood or district in which the property or use is located.

703.2

That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the [] Ordinance, and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

703.3

That such unnecessary hardship has not been created by the applicant.

703.4

---

6   When an applicant seeks a dimensional variance it is merely seeking a reasonable adjustment of the zoning regulations and, therefore, the quantum of proof necessary to establish unnecessary hardship for a dimensional variance is less than that needed to obtain a use variance. *Hertzberg* [*v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 721 A.2d 43 (Pa. 1998)]. In determining if a party has met its burden to demonstrate unnecessary hardship for a dimensional variance, the courts may consider multiple factors, including the economic detriment to the applicant, whether the cost to conform the property to the zoning ordinance is prohibitive, and the characteristics of the surrounding neighborhood.

*Singer v. Phila. Bd. of Adjustment*, 29 A.3d 144, 149 (Pa. Cmwlth. 2011).

That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor weaken the validity of the zoning, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

703.5

That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least deviation from the regulation in issue.

R.R. at 394a (Ordinance § 703); *see also* Section 910.2 of the MPC, 53 P.S. § 10910.2.[7]

Here, the ZHB made the following relevant findings:[8]

9. The stream bisecting the [] Property, the floodplain conditions on the western portion of the [] Property, and the size of the [] Property create an unnecessary hardship on [Applicant].

10. Because of the unnecessary hardship set forth in Paragraph 9 above, [Applicant] cannot construct the proposed tower in strict conformance with the required setbacks.

11. The unnecessary hardship was not created by [Applicant] or [Jones].

12. The reduced setbacks will not alter the essential character of the industrial neighborhood adjacent to the [] Property. It is noted that Section 703.4 [of the Ordinance] does not require or permit the [ZHB] to determine whether the proposed tower itself will alter the essential character of the neighborhood, but whether the setback variances will alter the essential character of the neighborhood, the proposed tower being a permitted use in the B-2 Industrial District.

---

[7] Added by the Act of December 21, 1988, P.L. 1329.

[8] The ZHB listed these findings in the conclusions of law section of its decision.

6

13. The requested dimensional variances . . . are the minimum variances necessary to afford relief to [Applicant].

R.R. at 16a-17a (ZHB Dec. at 8-9).

At the ZHB hearing, Von Rein testified:

To the west of [] Jones' property – they're both [] Jones' property, the one we're proposing the tower on and, of course, the one to the west, there's a stream that goes in between those two properties. All the way down to the railroad tracks to the west and including, of course, the stream is primarily a wetlands, wet properties, which would -- typically are discouraged to build and perhaps even prohibited.

R.R. at 328a. Von Rein further related:

We certainly looked at the entire [P]roperty. We looked at several properties in the area to try to find a suitable location, [] Hanson can certainly go into detail if you would like. But on this particular [P]roperty, [] Jones can testify, I believe, there's a gas well on that [P]roperty. He also is running a repair shop there. There's a septic field also that we had to avoid.[9] So there's several challenges on this property. And, of course, there's a railroad right of way as well, which abuts the southern part of the [P]roperty.

We really sort of found a different spot on the [P]roperty as it is because -- you know, buildable from an environment perspective and just from a practical perspective accessible and not on anything that's already existing. We already had to move the tower a little bit east to avoid a -- to avoid, but to provide a setback to the existing stream, so we were cognizant of that situation. So we still made some trade-offs but unfortunately it puts us in this situation.

R.R. at 329a-330a. Finally, Von Rein explained: "The stream, itself, from a wetland perspective, requires -- and I know we researched this specifically and we ran -- we

---

[9] Notably, the ZHB did not consider these factors when determining whether an unnecessary hardship exists.

7

had the studies done, but it requires, at least, a 50-foot setback." R.R. at 331a (emphasis added).

In addition, the Application (Exhibit Z-1) was admitted into evidence. The Application shows that the Property is irregularly shaped and the setback to the Property to the north is the tower -- the base of which is 54 feet, 4 inches, 132 feet to the south, 113 feet to the east, and 114 feet to the west. *See* R.R. at 332a. Applicant's counsel expounded: "So really wherever this tower is located on this parcel, it's not going to meet the setback requirements despite the fact that we're in the correct zoning district." *Id.*

Finally, LaFuria identified Exhibit B-5, which was entered into evidence. *See* R.R. at 344a. LaFuria described Exhibit B-5:

> [T]his is [] an extraction from our [geographic information system (]GIS[)] Mapping System. It's a program called Connect Explorer, it's an [i]nternet-based mapping system that the county does for us. It's a PDF of an aerial of the [P]roperty showing the property lines, all the goodies he has on site, and the [Federal Emergency Management Agency] flood plane is highlighted in blue.

R.R. at 343a-344a.

Objector asserts that Applicant has not demonstrated a significant hardship to support the ZHB's grant of dimensional relief. In support of its position, Objector cites to *Township of East Caln v. Zoning Hearing Board of East Caln Township*, 915 A.2d 1249 (Pa. Cmwlth. 2007) and *Schomaker v. Zoning Hearing Board of the Borough of Franklin Park*, 994 A.2d 1196 (Pa. Cmwlth. 2010). Both cases involved wireless telecommunication providers' requests for variances to construct cell towers on which they could place antennas.

*East Caln* involved a wireless communication provider's application to expand an existing conditional use permit to construct a new monopole cell tower that exceeded the applicable ordinance's height requirements. The provider

8

introduced evidence before the zoning hearing board documenting the coverage gap and attendant interference with emergency service functioning that the variance's approval would eliminate. The zoning hearing board granted the variance, reasoning it was in the public interest. The zoning hearing board found that the provider had established an unnecessary hardship accompanying its accessory use of the property, despite the fact that the property itself was already being productively used as a self-storage facility and the applicable ordinance permitted a wealth of other principal uses. This Court reversed the zoning hearing board's grant of the variance, emphasizing that in order for an applicant to meet the burden necessary for variance relief, the property owner must "establish a hardship that attends the *property*, as distinguished from its *owner*." *Id.* at 1254 (emphasis in original).

Here, although the ZHB concluded that the stream bisecting the Property and the floodplain conditions constituted an unnecessary hardship, the ZHB failed to consider the repair shop and the salvage yard for which the Property is currently being productively used. As the *East Caln* Court explained:

> A variance may be granted only upon proof that a substantial burden attends **all dimensionally compliant uses of the applicant's property**, which is simply not the case here. Among other uses permitted by the [O]rdinance, the [P]roperty can continue to be used [as a salvage yard and an automobile repair business]. While [Applicant] evaluated alternative sites and concluded no other sufficed, this does not establish a hardship that attends the [P]*roperty*, as distinguished from its *owner*. Therefore, [Applicant] has not met its burden to show unnecessary hardship that will justify a variance.

*Id.* at 1254 (citation and footnote omitted; emphasis added).

In *Schomaker*, also similar to the instant case, the wireless communication provider sought a variance to construct a communication tower that did not conform to the applicable ordinance's setback requirements. The applicants

9

therein argued that although the owner used the property as an electrical substation and for associated transmission equipment and poles, *East Caln* did not control because the size, shape and topography were factors to be considered. The *Schomaker* Court however, determined that "[i]n *East Caln*, the Court based its decision in pertinent part on the fact that someone was already making reasonable use of the subject property, and based on that fact, the Court concluded that the applicant had failed to demonstrate a burden associated with the *property*." *Schomaker*, 994 A.2d at 1202. Based thereon, the *Schomaker* Court ruled the applicant "ha[d] not established a hardship that entitles it to the variances it requested because the [o]wner [wa]s already making reasonable use of the [p]roperty."[10] *Id.* at 1203. Accordingly, in accordance with *East Caln* and *Schomaker*, because Jones is already making reasonable use of the Property, this Court holds that Applicant has not established an unnecessary hardship that entitles it to the variances it requested.

Objector next contends that Applicant's evidence was insufficient to satisfy the Ordinance requirements for a special exception to erect a self-supporting cell tower structure in lieu of a monopole structure for cell tower antennas. This Court has explained:

> Generally speaking, '[a] special exception is not an exception to a zoning ordinance, but rather a use which is expressly permitted, absent a showing of a detrimental effect on the community.' *Manor Healthcare Corp. v. Lower Moreland* [*Twp.*] *Zoning Hearing* [*Bd.*], . . . 590 A.2d 65, 70 ([Pa. Cmwlth.] 1991). In other words, as stated in our seminal decision in *Bray v. Zoning Board of Adjustment*, . . . 410 A.2d 909, 911 ([Pa. Cmwlth.] 1980)[:] 'The important characteristic of a special exception is that it is a conditionally permitted use, legislatively allowed if the

---

[10] The *Schomaker* Court also referenced "that the deviations from the [o]rdinance that [applicant] requested constitute more than a 'reasonable adjustment' of the [o]rdinance." *Id.* at 1203. The deviation requested therein was approximately 75%. Here, the variances requested are approximately 72%, 32%, 42% and 41%.

10

standards are met.' This Court recently explained that **an applicant for a special exception has** both **the duty of presenting evidence** and the burden of persuading the [ZHB] **that the proposed use satisfies the objective requirements of the zoning ordinance** for the grant of special exception.

*Tower Access Grp., LLC v. S. Union Twp. Zoning Hearing Bd.*, 192 A.3d 291, 300 (Pa. Cmwlth. 2018) (emphasis added).

Section 1106.1(F) of the Ordinance provides:

Type of Support Structure

Except as hereinafter provided in all cases, monopole antenna support structure shall be required. The [ZHB] may grant use of guy wire, freestanding, or any other type of antenna support structure as a special exception use after review by the Planning Commission and a public hearing before the [ZHB]. **The applicant must establish the following for such approval**:

1. Cost of erecting a monopole would preclude the provision of adequate service to the public, or erection of a safe antenna support structure requires a type other than a monopole.

2. The proposed antenna structure would have the least practical adverse visual impact on the environment and closely resembles a monopole.

3. The proposed antenna support structure is architecturally compatible with surrounding buildings and land use through location and design, and blends in with the existing characteristics of the site to the extent practical.

R.R. at 402a-403a (Ordinance § 1106.1(F) (emphasis added)).

Here, the ZHB made the following relevant findings:[11]

16. Although [Applicant] did present testimony relating to cost of the project, the cost difference between a monopole and the self-supporting tower was not proffered as a reason for the request for the self-supporting tower. However, the

---

[11] The ZHB listed these findings in the conclusions of law section of its decision.

11

nature of the monopole, which can sway and vibrate in the wind, compromises the quality of the cellular service, especially microwave service.[12]

17. The proposed self-supporting structure would not have any adverse visual impact on the industrial environment surrounding the [] Property, especially because of the more than one thousand-foot distance between the proposed tower and the commercial corridor on West Main Road. Furthermore, aesthetic considerations are not sufficient to deny a use by special exception.[13]

l8. The proposed self-supporting structure is architecturally compatible with the auto repair shop on the [] Property, with the Norfolk & Western Railroad tracks to the south, to the farmland to the east, and to the vacant land to the north and to the west of the proposed tower location. Furthermore, aesthetic considerations are not sufficient to deny a use by special exception.

19. [Applicant's] proposal was reviewed by the [Township] Planning Commission.

R.R. at 203a.

At the hearing, Von Rein testified:

[Solicitor John J. Shimeck, III]: Aside from the sway, you said that a self-support structure has less sway than a monopole, therefore it has more reliability in terms of the signal?

[] VON REIN: Think about it this way -- the initial answer is yes. The long answer is you've got a solid structure in a monopole that acts more or less like a sail, whereas the self-support structure allows the wind to go through it a lot easier. So **as a whole it performs a little better** from that perspective.

So, for example, if Verizon chose to utilize the microwave back home, . . . it would provide the back required to make the site function and those antennas are very sensitive to

---

[12] Microwave service is "a point-to-point antenna from a site elsewhere[.]" R.R. at 367a.

[13] *See Heck v. Zoning Hearing Bd. for Harvey's Lake Borough*, 397 A.2d 15 (Pa. Cmwlth. 1979).

12

sway. And if the tower is – if it's very windy it could disconnect that connection, for lack of a better phrase.

[] SHIMECK: So **does a 195-foot self-supporting tower withstand the wind -- from a structural and safety perspective, withstand the wind better than a monopole**?

[] VON REIN: The answer is **yes**. Coming from a common-sense perspective, if you have a three-legged structure that has a wider base, as opposed to a narrower structure, which is -- I don't know what analogy to use.

If you see a flagpole you see it sway back and forth in the wind, that's a similar concept whereas the self-support tower is less wind loading because it's smaller and because it allows the wind to go through it all at once.

R.R. at 367a-368a (emphasis added). With respect to costs, Von Rein related:

[] SHIMECK: **Is there a cost differential between the monopoles and self-supporting structure**?

[] VON REIN: Yes.

[] SHIMECK: What are those numbers, ballpark?

[] VON REIN: Roughly **$25,000 in favor of the self-support structure.**

. . . .

[] SHIMECK: Was the decrease -- or was the less cost of the self-support structure one of the factors in determining the type? And if that's yes or no if it was, how significant of a factor was it in the determination?

[] VON REIN: Certainly it was a factor. **We're certainly in the business of**, you know, **building a structure in the most cost effective way**.

[] SHIMECK: Is that the driving factor between the two?

[] VON REIN: It was one of the factors, in addition to the others mentioned.

R.R. at 369a-371a (emphasis added).

13

The above evidence is not "relevant evidence which a reasonable mind would accept as adequate to support the conclusion[s,]" *Marshall v. City of Phila.*, 97 A.3d 323 (Pa. 2014) (quoting *Twp. of Exeter v. Zoning Hearing Bd. of Exeter Twp.*, 962 A.2d 653, 659 (Pa. 2009)), that "the [c]ost of erecting a monopole **would preclude** the provision of adequate service to the public, or erection of a safe antenna support structure **requires** a type other than a monopole" and/or "[t]he proposed antenna structure would have **the least practical** adverse visual impact on the environment and closely resembles a monopole." R.R. at 402a-403a (Ordinance § 1106.1(F) (emphasis added)). Indeed, the ZHB did not make such findings.

Because Applicant did not establish the elements necessary for the ZHB to approve a self-supporting structure, this Court holds the ZHB abused its discretion by determining that Applicant satisfied the requirements for the special exception. Accordingly, the ZHB erred as a matter of law by concluding that Applicant's evidence was sufficient to satisfy the Ordinance's special exception requirements.

Lastly, Objector argues that the TCA does not support the grant of the dimensional variance and special exception. Initially, Section 332(c)(7) of the TCA provides, in relevant part:

> **Preservation of local zoning authority**
>
> **(A) General authority**
>
> Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a [s]tate or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.
>
> **(B) Limitations**
>
> **(i)** The regulation of the placement, construction, and modification of personal wireless service facilities by any [s]tate or local government or instrumentality thereof--

**(I)** shall not unreasonably discriminate among providers of functionally equivalent services; and

**(II)** shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

47 U.S.C. § 332(c)(7).

Not every municipality's denial of an application to build a wireless service facility violates the TCA. *APT Pittsburgh Ltd. P'ship v. Penn Twp. Butler Cty. of Pa.*, 196 F.3d 469 (3rd Cir. 1999). "[T]he [TCA's] ban on prohibiting personal wireless services precludes denying an application for a facility that is the least intrusive means for closing a significant gap in a remote user's ability to reach a cell site that provides access to land-lines." *Id.* at 480 (quoting *Sprint Spectrum, L.P. v. Willoth*, 176 F.3d 630, 643 (2d Cir. 1999)).[14]

> Here, the ZHB made the following relevant findings:
>
> D. A significant gap in coverage in the Celleo Partnership d/b/a Verizon Wireless network exists in the area of [the Township] to the west of North East Borough.
>
> E. The installation of a cellular communications tower on the [] Property would provide service to cover the gap area.
>
> F. Four telecommunications towers exist within a four-mile radius of the proposed tower on the [] Property.
>
> G. The three existing towers to the east, south, and southwest of the proposed tower are too distant and

---

[14] The [*Willoth*] Court indicated that the term 'significant gaps' embraces a de minimis principle. 'Where the holes in coverage are very limited in number or size (such as the interiors of buildings in a sparsely populated rural area, or confined to a limited number of houses or spots as the area covered by buildings increases) the lack of coverage likely will be de minimis so that denying applications to construct towers necessary to fill these holes will not amount to a prohibition of service.' *Willoth*, 176 F.3d at 643-44.

*APT*, 196 F.3d at 480 n.7. The evidence presented herein established that the gap included building interiors, but did not indicate the populous and, thus, did not show whether the gap is, in fact, significant. *See* R.R. at 314a-315a.

differentiated by terrain to cover the existing gap in coverage.

H. The fourth existing tower on the [] Property is inadequate in strength and height to support the required antenna array and to provide service to the gap in coverage.

R.R. at 13a (ZHB Dec. at 5).

At the hearing, Wierzchowski testified generally regarding a service coverage gap, *see* R.R. at 313a-317a, and the selection of a tower and/or location to erect a new tower, to cover that gap. *See* R.R. at 317a-319a. However,

> it is necessary for the provider to show more than that it was denied an opportunity to fill a gap in its service system. In order to show a violation of [S]ection 332(c)(7)(B)(i)(II) [of the TCA] . . . an unsuccessful provider applicant must show two things. First, the provider must show that its facility will fill an existing significant gap in the ability of remote users to access the national telephone network. In this context, the relevant gap, if any, is a gap in the service available to remote users. Not all gaps in a particular provider's service will involve a gap in the service available to remote users. The provider's showing on this issue will thus have to include evidence that the area the new facility will serve is not already served by another provider.
>
> Second, the provider applicant must also show that the manner in which it proposes to fill the significant gap in service is the least intrusive on the values that the denial sought to serve. This will require a showing that a good faith effort has been made to identify and evaluate less intrusive alternatives, *e.g*., that the provider has considered less sensitive sites, alternative system designs, alternative tower designs, placement of antennae on existing structures, etc.

*APT*, 196 F.3d at 480 (footnote omitted).

Here, Applicant's relevant evidence only established that a service coverage gap exists that Applicant's proposed service will fill. However, that evidence is insufficient to support a finding that the proposed service "will fill an

16

existing **significant** gap in the ability of **remote users** to access the national telephone network" and/or that it "is the **least intrusive** on the values that the denial sought to serve." *Id.* (emphasis added). Accordingly, the TCA does not support the grant of the dimensional variance and special exception.

For all of the above reasons, the trial court's order is reversed.


_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Vineyard Oil and Gas Company,      :
                   Appellant      :
                        :
                        :
           v.             :
                        :
North East Township      :
Zoning Hearing Board      :
                        :
           v.             :
                        :    No. 665 C.D. 2018
Capital Telecom Holdings, LLC      :

## O R D E R

AND NOW, this 31st day of July, 2019, the Erie County Common Pleas Court's April 16, 2018 order is reversed.

_____
ANNE E. COVEY, Judge