Overbrook Farms Club, Appellant, et al. *v.*
Philadelphia Zoning Board of Adjustment.

Argued Dec. 1, 1944. Before MAXEY, C. J., DREW,
STERN, PATTERSON, STEARNE and HUGHES, JJ.

*C. L. Cushmore, Jr.,* with him *White & Williams,* for
appellant.

*G. Coe Farrier, Assistant City Solicitor,* with him
*Frank F. Truscott,* City Solicitor, for appellee.

*E. Louis Rosen,* for appellee, Wynnefield Jewish
Centre, intervenor.

OPINION BY MR. CHIEF JUSTICE MAXEY, January 2,
1945 :

This is an appeal from the decree of the court below
dismissing the appeal from the action of the Zoning
Board of Adjustment, which Board dismissed the appeal

from the granting of a permit for the use of the premises at 5820 Overbrook Avenue, Philadelphia, as a one-family dwelling, rabbi's office and synagogue.

Previous to August, 1943, the premises were occupied as a one-family residence. This is in a district which is zoned Residential "A" on the zoning map of the City of Philadelphia.

The Zoning Ordinance of the City of Philadelphia was adopted August 10, 1933, pursuant to the Act of May 6, 1929, P. L. 1551. That Ordinance in Section 5(3) provides: "In each district, only such uses and uses accessory and incidental thereto, as are hereinafter specified, will be permitted."

Section 14(a) of the same Ordinance defines accessory uses, providing: "The accessory uses in residential districts shall include such uses as are customary and incident to any permitted use, not involving the conduct of a business, but may include the office or studio of a professional person and home occupations engaged in by occupants of a dwelling and may include a private garage or private stable."

Section 7 of the Ordinance lists the uses permitted in Residential District "A," in which the building in question is located. There are fourteen listed uses, including hospitals, railroad passenger stations, public utilities, farms, etc., but the specific provisions applicable to the case at bar are as follows: "The specific uses permitted in this district shall be the erection, construction, alteration or use of buildings or premises and/or land for: (1) detached single family dwellings, semi-detached single family dwellings, and detached buildings, other than dwellings, as hereinafter designated; (2) churches, chapels or other places of worship; (3) office of physician, dentist, or other professional person, when situated in the dwelling of such physician, dentist or other professional person, and incident to the main purpose of residence . . .; (13) accessory uses, including home occupation customarily incidental to any of the above permitted uses."

In August of 1943, upon application of the owner of the premises, a permit was granted by the Bureau of Surveys, Engineering and Zoning of the City of Philadelphia for use of the property as a "one family dwelling and rabbi's office for wedding ceremonies only." The present appellants appealed to the Zoning Board of Adjustment from the granting of this permit upon the ground that from the type of construction and alteration that was in progress at the time of appeal, the application was not made in good faith and that it was obviously the purpose of the owner to use the premises in some different manner. After hearing, this appeal was dismissed by the Board of Adjustment on August 31, 1943, on the ground that the evidence did not sustain the averments of the appeal. Appellant took no appeal from that action of the Board of Adjustment and that decision is not directly involved in this case.

A few months later, after a further complaint to the Bureau by the appellant, the owner successfully applied for a permit for use of the premises as a one-family dwelling, rabbi's office and synagogue. Overbrook Farms Club then appealed from the granting of that permit to the Zoning Board of Adjustment of the City of Philadelphia on the ground that such a *combination* of uses is not permitted by the Ordinance. The Board dismissed the appeal, and the club then secured from the Court of Common Pleas a writ of certiorari. Wynnefield Jewish Centre, a tenant of the premises, petitioned to intervene, and its petition was granted. After argument, the Court of Common Pleas sustained the Board of Adjustment and dismissed the appeal. This appeal followed.

It is conceded that under the Ordinance a person may in an "A" residental district have *either* a home, *or* a home *and* an office incidental thereto, *or* a place of worship, but appellant contends that a person cannot in such a residential district have a structure which is a home, an office *and* a place of worship. Appellant says "It must be assumed that the legislative body of the

City of Philadelphia intended to "prohibit in this district anything more than a single one of the permitted uses, plus some 'accessory' use as therein defined." Appellant also says: "The Ordinance provides for fourteen different types of uses which are permissible in this kind of district. The logical result of the reasoning of the court below would be that all fourteen types of use might take place simultaneously in the same building. . . . When it is considered that the effect of the decision of the court below, when carried to its logical conclusion, is to permit a dwelling over a railroad station, a dwelling over a telephone exchange or a dwelling over a library, art gallery or public museum, (all of which are uses permitted in "A" Residential districts) the fallacy of the court's reasoning becomes even more obvious."

The answer to that argument is that there is *obvious* incongruity in "fourteen different types of uses" in one building or in having a dwelling over a railroad passenger station, or over a public museum or a public utility, but there is no such incongruity in having a dwelling *over* a church or attached to a church in any other way. According to a well known statement of Justice HOLMES, differences may be *only* in degree [1] and yet be important.

The idea of a home and a church being under one roof is not shocking to either the practical or the aesthetic sense of a normal human being. A home and a place of divine worship are not necessarily mutually exclusive.[2] The formal worship of God, in family homes, was much more widely practiced in this country in a

---

[1] "I have heard it suggested that the difference is one of degree. I am the last man in the world to quarrel with a distinction simply because it is one of degree. Most distinctions, in my opinion, are of that sort, and are none the worse for it." From Justice HOLMES' dissenting opinion in *Haddock v. Haddock*, 201 U. S. 562, 631.

[2] "Where two or three are gathered together in my name, there am I in the midst of them": St. Matthew 18 : 20.

very creditable earlier era than it is in this more materialistic age, and such worship was not always confined to the immediate family. Very frequently many neighbors joined in the worship. There are well known and respected religious sects in this state and country which erect no church but conduct divine worship on the several Sabbaths of the year in the respective homes of the communicants. Most of the members of these sects reside in rural districts, but if they should migrate to the cities we know of no reason why they should not be permitted to hold their religious services in the homes of their members, provided, of course, that in doing so they violated no law or municipal regulation whose purpose it is to protect life and health.

Appellant says: "It is quite a normal situation for a manse or rectory to adjoin a church building, but in the usual case of the kind which has been practiced for decades, the two are separate buildings and not imposed one on top of the other." The "picture" thus presented by the appellant and which he wishes to prevent becoming an actuality is that of a *dwelling house in form* being physically imposed on a structure which is in form a church. This would indeed be an architectural hybridity for which, we take it for granted, no building permit would ever be issued in the City of Philadelphia.

It is a building's *uses* and not its facade or its inner plan which it is the Board's duty to pass upon. That the same building may house a religious congregation on the days of worship, and on all days may provide an office for a Rabbi and living quarters for his family did not impress the Board as being contrary either to the Ordinance or to anything else which it is the business of these officials to protect. That the home of a clergyman is often physically attached to the side of the church so that immediate ingress and egress from one to the other is possible, is a fact open to observation in almost every large city of this country, and no one appears to have found anything objectionable in such an arrangement.

Why the *vertical* integration of a clergyman's dwelling-place with his church is objectionable while their *horizontal* integration is acceptable, we are not informed.

The City of Philadelphia states through its City Solicitor that it finds no merit in the objection of this appellant, first, because the Ordinance specifically exempts the applicant from obtaining any Zoning authorization and, secondly, because if any such requirements existed the Zoning Board of Adjustment has plenary discretion to grant a Certificate of Variance under the circumstances.

We agree with the court below that "there is nothing in the Ordinance or elsewhere" which justifies judicial interference with the rights to be exercised under the certificate issued. We find no abuse of discretion on the part of the Zoning Board of Adjustment.

The order is affirmed.