Norman Desousa and Raymond Garfinkle, t/a Spring Ridge Apartments, *v.* The Zoning Hearing Board of Whitehall Township. Whitehall Township, Appellant.

Argued April 1, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*F. Paul Laubner,* with him *Harry A. Kitey,* for appellant.

*Henry S. Perkin,* with him *Nabhan & Nabhan,* for appellees.

OPINION BY JUDGE MENCER, May 30, 1975:

This is an appeal from an order of the Court of Common Pleas of Lehigh County reversing the decision of the Zoning Hearing Board of Whitehall Township (Township) which denied the request of Spring Ridge Apartments (Spring Ridge) for an alterations permit to partially modify a conforming structure to two conforming uses. We reverse.

It is now a well-established rule that where, as here, a lower court does not take any additional testimony, our scope of review is restricted to a determination of whether or not the zoning hearing board committed an abuse of discretion or an error of law. *Doran Investments v. Muhlenberg Township Board of Commissioners,* 10 Pa. Commonwealth Ct. 143, 309 A.2d 450 (1973).

The cognizable facts in this case reveal that Spring Ridge proposes to rent the lower level of K Building in its large apartment complex to Development Pre-School, a professional organization, for the purpose of conducting a preschool learning center which would service the general preschool population of the area. It is the intent of Development Pre-School to utilize the other apartment complex facilities also, including the playground, pool, and parking areas, during the course of its teaching day. About thirty part-time students are expected to attend the school. K Building's upper levels presently consist of twelve one-bedroom apartments, while the lower level is used only by the complex owners for temporary storage. Both apartmental and educational uses are permitted uses in this R-2 zone.

K Building is a small part of Spring Garden's large garden apartment complex, which consists of approximately 308 apartment units. Tenants are entitled to the use of all facilities of the complex. The Spring Garden complex was originally approved as a whole unit when the plans were submitted to the Township before its original construction. At that time the lower level of K Building was designated as a storage area.

The threshold issue here is whether or not, under this particular ordinance, a second permitted use may be added to a building that already contains one permitted use. We think not.

Part five of the Whitehall Township zoning ordinance provides in part:

"R-2 Residential Zones

. . . .

"*Section 52. Use Regulations*: A lot may be used or occupied for any of the following purposes:

"1. Any use permitted in an R-1 Residential Zone.[1]

. . . .

"5. Multiple dwellings . . . ."

Part three of the ordinance defines the term "multiple dwellings" to be "a building *designed and occupied exclusively* as a residence for three (3) or more families, also sometimes known as an 'apartment dwelling'." (Emphasis added.)

We believe that these express provisions control the present appeal. We construe them as expressing an unequivocal and plain intention to exclude and prohibit any other use when an apartment dwelling use is already present. We of course recognize that in construing a zoning ordinance any doubt concerning the scope of a permitted use or an ambiguity respecting its definition must be resolved in favor of the applicant. *Abington*

---

1. Educational uses, such as this preschool use, are permitted uses in R-1 zones.

*Township v. Dunkin' Donuts Franchising Corporation,* 5 Pa. Commonwealth Ct. 399, 291 A.2d 322 (1972). Further, words and phrases are to be given their everyday meaning unless otherwise defined by the ordinance or by their context. *Shapiro v. Zoning Board of Adjustment,* 377 Pa. 621, 105 A.2d 299 (1954).

A recent Bucks County case, *Plosa v. Northampton Township Zoning Board of Adjustment,* 20 Bucks L. Rep. 354 (1970), interprets the term "exclusively" under similar circumstances. In his able and thorough opinion, Judge LUDWIG, speaking for an en banc court, discusses at length the application of this term when dealing with single family dwellings:

> "It appears to us that the word 'exclusively' governs the meaning of the phrase we are dealing with: 'A building designed for *and* occupied *exclusively* as a home or residence for one family.' 'Exclusively' has been defined as 'solely' and 'apart from all others': Black's Law Dictionary, 4th Ed. (1957). The word 'exclusive' has been so construed by our Supreme Court in Harris-Walsh, Inc. v. Dickson City Borough 420 Pa. 259, 271 (1966) in considering the meaning of the phrase 'exclusive jurisdiction':

> " 'The word "exclusive" is of Latin derivation— "ex" meaning "out" and "claudere" meaning "to shut." "Exclusive" precludes any idea of co-existence and its usual, ordinary and generally accepted meaning is "sole," "undivided" and "possessed to the exclusion of others.' "

> "So defined, the occupancy of a single family dwelling as a residence or home is 'sole and undivided' and any additional use or purpose is 'shut out' and denied co-existence. A contrary conclusion would confound the average home owner in 'Orchard Hill.' It might well dismay any purchaser of a housing development property who has seen signs and advertisements describing the development as 'ex-

clusively residential.' This does not mean that churches, schools, post offices, or other such uses customarily associated with a single-family community are to be barred from residential districts, but only that they be situated on land other than that occupied by the household residents. Although not before us in the constitutional sense, the propriety of such single-family zoning restrictions in Pennsylvania would seem to be beyond question. See Caldwell et ux. v. Northampton Township Zoning Board of Adjustment, 18 Bucks Co. L. Rep. 573, 577 (1968) ; cf. Best v. Zoning Board of Adjustment, 393 Pa. 106, 112-113 (1958) ; Jennings' Appeal, 330 Pa. 154, 160 (1938)." 20 Bucks L. Rep. at 357 (emphasis in original).

This rationale is equally applicable to the present circumstances concerning multiple dwellings. The occupancy of a multiple dwelling for residences "is 'sole and undivided' and any additional use or purpose is 'shut out' and denied co-existence." If we would affirm here, it would likely be noted by the present tenants of Building K that they were sharing quarters with some thirty young and energetic children. It probably would also surprise the other 293 lessees to discover a marked increase in the use of the swimming pool and other recreational facilities. One-bedroom apartments above a children's preschool teaching facility suggest adjacent uses that are not truly compatible. Therefore, there is a definite rational basis for the use of the term "exclusively" in the township's ordinance and this proposed dual use is not permitted under the ordinance and the factual situation of this case.

On two former occasions our Supreme Court has dealt with and allowed combined uses. *Overbrook Farms Club v. Philadelphia Zoning Board of Adjustment,* 351 Pa. 77, 40 A.2d 423 (1945) ; *Floersheim Appeal,* 348 Pa. 98, 34 A.2d 62 (1943). However, both the zoning ordi-

nances and the facts in these cases are readily distinguishable from the present ordinance and present facts. As Judge LUDWIG, speaking in *Plosa, supra,* correctly stated:

> "Both cases on which appellants rely, Floersheim Appeal, 348 Pa. 98 (1943) and Overbrook Farms Club et al. v. Philadelphia Zoning Board of Adjustment, 351 Pa. 77 (1945), interpreted city zoning ordinances (Pittsburgh and Philadelphia) to uphold the granting of permits in one family districts for a synagogue and a rabbi's living quarters—and, in Overbrook Farms Club, a third use as the rabbi's office. Neither dealt with the highly restrictive definition of a single family dwelling found in the ordinance before us. Floerscheim emphasizes this point (348 Pa. at 100): 'The definition of a "One Family Dwelling" is broad. [Footnote: The Zoning Ordinance describes a "One Family Dwelling" as "A separate building designed for or occupied exclusively by one family."] A building "designed for" one family may very readily be used as a "church." ' In the present case, however, this simply is not so of a 'building designed for and occupied exclusively as a house or residence. . . .'
>
> "Overbrook Farms Club turns on the inherent compatibility and at least arguable desirability of having a home and a church and a clergyman's office 'under one roof.' There, the ordinance did not expressly prohibit the combination of such uses, and, as the opinion states: 'A home and a place of divine worship are not necessarily *mutually exclusive.*' But in Northampton Township, the zoning ordinance itself tells us that use for a home or residence is exclusive of other uses." 20 Bucks L. Rep. at 358 (emphasis in original).

These same distinctions are equally applicable to the "exclusive multiple dwelling" ordinance provisions that we presently have before us.

Order reversed.