519 A.2d 1040

Edward A. Cloonan, Petitioner *v.* The Honorable Dick Thornburgh, Governor of the Commonwealth of Pennsylvania, Respondent.

Pennsylvania Liquor Control Board, Petitioner *v.* Governor Richard Thornburgh, Respondent.

Wendell W. Young, Individually, as a taxpayer et al., Petitioners *v.* Governor Dick Thornburgh, Respondent.

Edward P. Zemprelli et al., Petitioners *v.* Dick Thornburgh, Respondent.

United Food and Commercial Workers Local 1357 et al., Petitioners *v.* Governor Richard Thornburgh, Respondent.

2

Heard December 22, 1986, before President Judge CRUMLISH, JR.

*John D. Killian,* with him, *Robert W. Barton, Killian & Gephart,* for petitioner, Edward A. Cloonan.

*Ken Skelly,* Chief Counsel, with him, *Felix Thau,* Deputy Chief Counsel, and *Eileen S. Maunus,* Assistant Counsel, for petitioner, Pennsylvania Liquor Control Board.

*Gary F. DiVito, Goldstein, Friedberg, Zaslow & DiVito, P.C.,* for petitioners, Wendel W. Young and Carl Huber, individually and as Presidents of UFCW Locals Nos. 1357 and 23.

*Michael T. McCarthy,* Chief Counsel, with him, *Sally A. Ulrich,* Assistant Counsel, to Senate Democratic Floor Leader, for petitioners, Edward P. Zemprelli, et al.

*Bernard N. Katz,* with him, *Basil L. Merenda, Meranze and Katz,* for petitioners, United Food and Commercial Workers Local 1357 et al.

*Henry G. Barr,* General Counsel, with him, *Barry M. Hartman,* Administrative Deputy General Counsel,

*Raymond Pepe,* Deputy General Counsel, and *Andrew Cline,* Associate Deputy General Counsel, for respondent, Governor Richard Thornburgh.

*Kathryn Speaker MacNett, Baskin, Flaherty, Elliott, Mannino & Beren, P.C.,* for amicus curiae, Penn Beer Distributors, Inc. et al.

*Fred Speaker,* with him, *Thomas B. Schmidt, III, Pepper, Hamilton & Scheetz,* for amicus curiae, Common Cause.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., December 29, 1986:

On December 22, 1986, this Chancellor heard argument on seven separate applications for special and preliminary relief involving five actions brought against Dick Thornburgh, Governor of the Commonwealth of Pennsylvania, which arose from the issuance of Executive Order 1986-7 providing for the phase-out of the Pennsylvania Liquor Control Board (PLCB).

I.

Edward A. Cloonan, a state store manager and President of the Independent State Store Union, filed a petition for review (No. 3467 C.D. 1986) in this Court's appellate jurisdiction, 42 Pa. C. S. §763, and an application for special relief pursuant to Pa. R.A.P. 1532(a) seeking to preliminarily enjoin Executive Order 1986-7.

II.

The PLCB filed a petition for review (No. 3481 C.D. 1986) in the nature of an action for declaratory judgment and permanent injunction in this Court's original jurisdiction, 42 Pa. C. S. §761, and an application for

summary relief[1] pursuant to Pa. R.A.P. 1532(b) requesting this Court (1) to declare Executive Order No. 1986-7 null and void, (2) to define the legal status of the PLCB after December 31, 1986, and (3) to declare the Sunset Act[2] unconstitutional.

## III.

Wendell W. Young, as taxpayer and president of the United Food and Commercial Workers Union, representing approximately 3,500 state store employees, filed a petition for review (No. 3534 C.D. 1986) in the nature of an action for declaratory judgment and permanent injunction in this Court's original and appellate jurisdiction and an application for special relief asking this Court to declare the Sunset Act unconstitutional and Executive Order 1986-7 invalid.

## IV.

Seven state Senators[3] filed a petition for review (No. 3535 C.D. 1986) in our original jurisdiction and an application for preliminary injunction seeking to enjoin the implementation of Executive Order 1986-7.

---

[1] The PLCB also filed an application for special relief in the nature of a motion for a temporary restraining order. On December 11, 1986, this Court, *per curiam*, denied the application to the extent it sought to enjoin the meeting of the Alcoholic Beverage Control Coordinating Council scheduled for December 11, 1986. On December 17th, after hearing, this Chancellor denied the remainder of the relief requested in the application.

[2] Act of December 22, 1981, P.L. 508, *as amended*, 71 P.S. §§1795.1—1795.14.

[3] The Senators are Edward P. Zemprelli, Anthony B. Andrezeski, Freeman Hankins, Roxanne H. Jones, Michael A. O'Pake, James A. Romanelli and Patrick J. Stapleton.

## V.

Finally, the United Food and Commercial Workers Local 1357 filed a petition for review (No. 3604 C.D. 1986) in the nature of an action for declaratory judgment and permanent injunction in this Court's original jurisdiction and an application for summary relief requesting this Court to enjoin the implementation of Executive Order 1986-7, to declare the Sunset Act unconstitutional, and to define the legal status of the PLCB after December 31, 1986.

On December 19, 1986, the Pennsylvania AFL-CIO, the American Federation of State, County and Municipal Employees, Council 13, AFL-CIO, the Pennsylvanians for a Responsible End to the State Store System[4] (PRESSS) and Common Cause, a non-profit citizen organization promoting accountability in federal, state and local governments, were granted status as intervenors. On December 23, 1986, the President and President Pro Tempore of the State Senate were granted permission to intervene as party-respondents.

Notwithstanding the number of petitions and variety of applications filed, these suits collectively present identical issues: (1) the constitutionality of the Act of December 22, 1981, commonly and hereafter referred to as the Sunset Act; (2) the validity of the sunset procedure as applied to the PLCB, and (3) the constitutionality and/or validity of Executive Order 1986-7.

## SUNSET ACT

The Sunset Act provides a detailed statutory mechanism for legislative review of, *inter alia,* the conduct, need for, and constitution of existing administrative

---

[4] In PRESSS's application to intervene, twenty-seven individuals were named. These persons were also granted intervention.

agencies, boards and commissions in this Common-
wealth. Common Cause notes in its amicus brief that
thirty-four other states have enacted similar Sunset leg-
islation. The Sunset Act provides for the following: a ter-
mination deadline; an evaluation and review process;
and a reestablishment or continuance format. Because
it is a novel and innovative act, it is subject to wide and
varied interpretations in the public and private sectors.
This Chancellor believes a step-by-step analysis of the
Sunset Act's procedures through a termination of a hy-
pothetical state agency, "XYZ Board," will be illustra-
tive.

## XYZ BOARD

Section 6 of the Act mandates that the XYZ Board
together with its corresponding statutory functions *shall*
terminate all activities and shall go out of existence on
December 31, 1986.

Sections 3 and 4 of the Act create a Sunset Leader-
ship Committee[5] and authorize it to direct and coordi-
nate the implementation of the sunset review proce-
dure. In January of the scheduled termination year, the
Committee designates an appropriate standing commit-
tee to conduct a review and evaluation of the XYZ
Board.

---

[5] Section 3 reads:

There is hereby created a joint committee of the Gen-
eral Assembly to be known as the Leadership Committee.
The Leadership Committee shall be composed of the
Speaker of the House of Representatives, the President
pro tempore of the Senate and the Majority and Minority
Leaders of the House of Representatives and the Senate.
The Speaker of the House of Representatives shall serve as
the temporary chairman of the committee until such time
as the committee shall elect a chairman. Members of the
Leadership Committee may designate alternate members
of their respective chambers who will have the same
powers and duties as regular members.

Section 5, which prescribes evaluation and review guidelines, requires the standing committee to consider certain reports and take certain action to ensure an appropriate review; a public hearing on the sunset of the XYZ Board must be held; before March 1st of the scheduled termination year, advice from the Office of the Auditor General and Governor's Offices of Budget and Administration must be obtained; and reports from the Legislative Budget and Finance Committee and the Legislative Reference Bureau concerning performance audits and XYZ legislative authority must be reviewed. Finally, on or before the first September session day of the scheduled termination year, the standing committee makes findings and conclusions as to its evaluation and review of the XYZ Board and submits a report along with a draft of appropriate legislation to implement its recommendations to the General Assembly. Each House is then permitted to act accordingly, consistent with its rules, on the legislation.

Section 7(a) of the Act provides for a *reestablishment* of the XYZ Board by appropriate legislation or, pursuant to Section 7(b), a *continuation* of the XYZ Board by resolution, calendared for the first session day of November in the scheduled termination year, passed by a majority of the membership of each House.

If the XYZ Board is not reestablished or continued, Sections 6(f) and 9 provide for administrative termination procedures. The sunsetted XYZ Board is given six months to "wind up [its] affairs"[6] and to dispose of prop-

---

[6] Section 6(f) reads:

Agencies terminated shall be given until June 30 of the year following the one in which they are terminated to wind up their affairs. During that period, the Governor may petition the General Assembly for a review of the termination but the agency shall be terminated unless the General Assembly passes a law to be contrary.

erty, to arrange for the retention of records, and to do whatever else is necessary to finalize operations by the date certain (*i.e.,* June 30th of the year following the sunset termination year).

During the windup, the Governor may petition the General Assembly for a review of the termination; however, the agency is terminated "unless the General Assembly passes a law to the contrary." Section 6(f). The Governor *"shall not* utilize a reorganization plan, *executive order,* rule or regulation or comparable authority to evade the provisions of this Act." Section 6(d) (emphasis added). This Chancellor finds that the Section 7 deadline for consideration and reestablishment or continuation of the existing XYZ Board is a self-imposed mechanism.

## Sunset of PLCB

The stipulated exhibits in this proceeding and the record and holding in *Zemprelli v. Jubelirer,* 102 Pa. Commonwealth Ct. 637, 519 A.2d 518 (1986),[7] declare that the PLCB is terminated on December 31, 1986.[8] In that case, the evaluation and review process was complied with. However, due to a variety of disagreements on proposed legislation, no consensus as to a reestablishment or reshaping of the PLCB was reached by the General Assembly as of November 1, 1986. Hence, at that time, the next step—namely, the continuation provisions of Section 7(b)—came into focus. The House of Representatives passed a resolution continu-

---

[7] The parties stipulated that the record in *Zemprelli* would be part of the record in this proceeding.

[8] The PLCB was originally scheduled for termination on December 31, 1985. However, the Leadership Committee, pursuant to Section 4(4) of the Sunset Act, adopted a resolution postponing the termination for another year.

ing the PLCB for a period of ten years. However, the Senate failed to consider "the question, in form of resolution, of whether the Liquor Control Board . . . [shall] be continued." In *Zemprelli v. Jubelirer,* this Court reviewed the legislatively prescribed duty of the presiding officer of the Senate and held that, pursuant to Section 7(b), he had a mandatory duty to list for that body's consideration the PLCB sunset resolution on the Senate calendar. He failed to do so. Since the filing of our Order, the General Assembly has adjourned *sine die.*

On December 1, 1986, the Governer issued Executive Order 1986-7 which purported to establish an Alcoholic Beverage Control Coordinating Council (ABC Council) whose purpose is to supervise the phase-out of the PLCB and the transfer of its authorized duties to various other state administrative agencies.

After this executive order, considerable confusion in and out of government ensued as to (1) the continued existence of the PLCB under the Sunset Act after December 31, 1986, and (2) the authority of the Governor to issue an order transferring the regulatory authority of the PLCB. Hence, the instant actions were initiated.

Upon consideration of the petitions, applications, briefs and argument presented by each of the petitioners, this Chancellor will act upon the PLCB's application for summary relief. Since it includes directly and indirectly the concerns of the other petitioners, it is unnecessary to consider formally the other applications.

A prerequisite to the granting of summary relief, pursuant to Pa. R.A.P. 1532(b), is that there exists no factual dispute. Upon consideration of the briefs, pleadings and arguments, this Chancellor finds no disputable facts in existence essential to review of the legal rights of the petitioners.

Summary relief can be granted only where no material fact is in dispute and where the right to relief of the

applicant is clear. *Gartner v. Pennsylvania Board of Probation and Parole*, 79 Pa. Commonwealth Ct. 141, 469 A.2d 697 (1983). The issuance of a declaratory judgment is a matter of judicial discretion which should only be exercised to illuminate an existing right, status or legal relation. It may not be used to search out new legal doctrine. *Doe v. Johns-Manville Corp.*, 324 Pa. Superior Ct. 469, 471 A.2d 1252 (1984). The Declaratory Judgment Act, 42 Pa. C. S. §§7531-7541, is broad in scope and is to be liberally construed and administered, but it is not without its limitation. *Id.*

## CONSTITUTIONALITY OF SUNSET ACT

Initially, this Chancellor will review the constitutionality of the Sunset Act. Sunset is commonly defined as "the decline or final phase, as of life." American Heritage Dictionary of the English Language 1290 (1969). The PLCB challenges the constitutionality of the Sunset Act because it violates Article II, §1; Article III, §§1, 4, 5, 8 and 9; and Article IV, §15 of the Pennsylvania Constitution.

These constitutional articles grant to the General Assembly the power to legislate (Article II, §1), provide for procedural requirements and restrictions on the passage, consideration, and finalization of bills (Article III, §§1, 4, 5, 8 and 9), and provide for executive approval of bills passed by both Houses of the General Assembly (Article IV, §15).

It is well-settled that a legislative enactment enjoys a presumption in favor of constitutionality and should not be declared unconstitutional unless it clearly, palpably and plainly violates the Constitution. All doubt is to be resolved in favor of a finding of constitutionality. *Parker v. Children's Hospital of Philadelphia*, 483 Pa. 106, 394 A.2d 932 (1978).

12

This Chancellor holds that the Sunset Act is constitutional.[9] When the Sunset Act was passed by the General Assembly and signed by the Governor in the Fall of 1981 all legislative procedural constitutional requirements were met. At that time, the legislature enacted a law abolishing administrative agencies on a date certain and providing for a six-month dismantling process. Evaluation and review of sunset agencies were provided so that the legislature in its wisdom could make an experienced decision as to the conduct, need for and the constitution of existing administrative boards or agencies. The continuation mechanism in Section 7(b), addressed in *Zemprelli v. Jubelirer,* is a last minute, final-salvo opportunity for the legislature to continue in present form an administrative agency. Section 7 requires that for an agency to be continued or reestablished, a positive bicameral legislative action must take place. This Chancellor holds that this action is consistent with Articles II and III of the state Constitution which control the introduction, passage, and finalization of bills. Moreover, Article II, §9 would require that any approved joint sunset resolution be presented to the Governor for his approval. If, for whatever reasons, the General Assembly fails to enact positive legislation or a resolution consistent with constitutional requirements, the termination provision in Section 6 is effective and

---

[9] Petitioners at No. 3535 C.D. 1986 argue that the bicameralism (Article IV, §15) and presentment requirements (Article III, §4) of the Pennsylvania Constitution have been violated. The Senators view Section 7(b)'s continuation resolution procedure as a precondition to the implementation of Section 6's agency abolition dates. Moreover, they assert that Section 7 grants to a single House in the General Assembly the authority to discontinue an administrative agency by not voting on continuation resolutions. Our thorough and exhaustive review of the case law supporting petitioners' argument reveals that the authority that they cite is inapposite because it does not concern the Sunset Act.

the administrative agency expires on the previously ordained date certain and after its dismantling is completed. No constitutional violation of the legislative process has occurred.

Having rejected arguments that the Sunset Act is unconstitutional, and holding that the failure of the Presiding Officer of the Senate to list for that body's consideration the PLCB sunset resolution on the Senate calendar does not negate the clear intent of the General Assembly to terminate the Liquor Control Board, this Chancellor finds that the PLCB has been sunsetted, effective December 31, 1986, by the Act of December 22, 1981.

This being so, we must now focus our attention on Sections 6(f) and 9 to determine the PLCB's statutory authority and responsibility after December 31, 1986.

## PLCB TERMINATION ACTIVITIES

Initially, we must review the statutory duties of the PLCB. Section 104(c) of the Liquor Code[10] states:

(c) Except as otherwise expressly provided, the purpose of this act is *to prohibit the manufacture of and transactions in liquor,* alcohol and malt or brewed beverages which take place in this Commonwealth, *except by and under the control of the board* as herein specifically provided, and every section and provision of the act shall be construed accordingly. The provisions of this act dealing with the manufacture, importation, sale and disposition of liquor, alcohol and malt or brewed beverages within the Commonwealth through the instrumentality of the board and otherwise, provide the means by

---

[10] Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §1-104(c).

ᵗ. which such control shall be made effective. *This act shall not be construed as forbidding, affecting or regulating any transaction which is not subject to the legislative authority of this Commonwealth.*

(Emphasis added.)

This provision clearly vests in the PLCB exclusive authority to control the manufacture, sale and disposition of alcohol in this Commonwealth. Therefore, the *termination* of the PLCB would make all such activities *prohibited* in this Commonwealth. While at first reading this might appear to reinstate Prohibition in this Commonwealth, the legislature appreciated this possibility and wisely enacted the following procedure.

After December 31, 1986, the PLCB is authorized to "wind up [its] affairs." Although this phrase is not defined in the Act, pursuant to the authority of the Declaratory Judgments Act, 42 Pa. C. S. §7532, and following the guidelines of the Statutory Construction Act, 1 Pa. C. S. §§1921-1939, we will define hereinafter the authority and duty of the PLCB until *June 30, 1987,* when it will *completely terminate all* activities.

Undefined words and phrases in statutes should be given their everyday meaning unless otherwise defined by their context. *See Desousa v. Zoning Hearing Board of Whitehall Township,* 19 Pa. Commonwealth Ct. 367, 339 A.2d 650 (1975). Also, it must be remembered that the General Assembly does not intend a result that is absurd, impossible or unreasonable. 1 Pa. C. S. §1922(11).

We are thus confronted with the question of how, and to what extent, a board that is terminated, together with its statutory functions, may nevertheless retain viability during the "wind-up" period. Stated otherwise, the termination and wind-up provisions of the Sunset Act must be construed, if possible, so as to avoid an

absurd, impossible or unreasonable result. This Chancellor believes that the abrupt cessation of the statutory functions vested in the PLCB by the Liquor Code would produce chaos in the Commonwealth. As discussed in this opinion, the Governor's effort, by Executive Order, to phase out the public monopoly of the control, sale, distribution and consumption of alcohol is without legal effect.

Consistent with these guidelines, and bearing in mind the unique role of the PLCB, we hold that the PLCB in winding up its affairs shall continue its present operations consistent with a June 30, 1987 termination date. The PLCB shall continue to buy and sell alcoholic beverages and supervise and enforce the Liquor Code. However, the PLCB shall notify all licensees that their privilege of doing business under the Liquor Code will expire on June 30, 1987. The PLCB shall notify all employees of its June 30, 1987 termination date and of their right to other state employment under Section 9 of the Sunset Act. The PLCB shall take all other steps necessary to wind up its affairs by June 30, 1987. State stores shall not, as certain published PLCB comments have suggested, close permanently on December 31, 1986.

## EXECUTIVE ORDER

The twenty-six page Executive Order purports to establish the ABC Council as an advisory agency within the Executive branch to supervise the PLCB's termination process. It also places mandatory requirements on the ABC and other administrative agencies to auction state stores, issue liquor licenses and, more importantly, continue the regulation of alcohol in this Commonwealth after the termination of the PLCB on December 31, 1986.

The Sunset Act provides for gubernatorial or executive action in Sections 6(d) and 6(f) of the Act. These

sections provide that during the wind-up period, *i.e.,* January 1, 1987 to June 30, 1987, the Governor may petition the General Assembly for a review of the termination; however, the termination shall be effective unless the legislature passes a law to the contrary and states that the Governor *"shall not utilize a reorganization plan, executive order, rule or regulation or comparable authority to evade the provisions of this act."* (Emphasis added.)

Counsel for the Governor now argue that the executive order is merely an intra-executive branch plan which neither mandates nor expects official compliance by the PLCB.[11] The petitioners counter by asserting that the executive order usurps legislative power delegated to the General Assembly by the Pennsylvania Constitution and violates the pertinent sections of the Sunset Act.

Unquestionably, the enactment of the Liquor Code and the creation and indeed the abolition of the PLCB was a *legislative* act. In *Commonwealth v. Wilsbach Distributors, Inc.,* 513 Pa. 215, 519 A.2d 397, 400 (1986), our Supreme Court wrote at slip op. 6-7 (footnote omitted):

> Our review of the Liquor Code and regulations promulgated thereunder indicate the legislature's clear intent to regulate in plenary fashion every aspect of the alcoholic beverage industry. Every phase, from manufacture to sale and disposition is subject to the exclusive control of the State through its designated arm of enforcement, the Liquor Control Board.

---

[11] The Governor raised in his brief standing objections to each of the petitioners. Counsel argue that the executive order is advisory only, and hence, the petitioners were not aggrieved by the order. At this stage in the proceedings, after finding that the executive order is more than advisory, we are satisfied that petitioners have standing.

Notwithstanding protestations to the contrary, this Chancellor reads the executive order to be clearly in conflict with Sections 6(d) and 6(f) of the Sunset Act and, in so doing, finds that the order invades the exclusive province of the General Assembly to legislate and control every phase of the alcoholic beverage industry in the Commonwealth. The Governor's plan is a reorganization of the enforcement, licensing and regulatory authority of the PLCB. As an independent administrative agency,[12] the PLCB is not subject to the exclusive control of the Governor. We hold that the Governor's executive order is invalid and void.[13]

## REVIEW AND CONCLUSION

The subject of these controversies is the Sunset Act as it applies to the PLCB.

Of the seventy-four agencies and commissions affected by the Act, the PLCB has been the only one caught in the avowed philosophical differences among the Governor and members of the General Assembly.

Sides were chosen, the scrimmages began, and volleys of political public relations and parliamentary salvos have been fired over the heads of a bewildered, panic-stricken, uncomprehending public.

As it usually does, an armistice ensues and the courts are called in to pronounce its terms.

---

[12] Section 206 of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §2-206.

[13] Counsel for the United Food and Commercial Workers Local 1357 argued that an unfair labor practice was committed by the Commonwealth through the Governor's executive order. Our review of the pertinent provision in Article 27 of the Collective Bargaining Agreement indicates that the provision is not violated since it has been a legislative action, not executive action, which terminated the PLCB.

When the pleadings, briefs and arguments are refined, three controlling issues emerge:

1. the constitutionality of the Sunset Act;
2. the Act's interpretation;
3. the validity of the Governor's executive order.

The Sunset Act was enacted and respondent Governor signed it into law on December 22, 1981. It was an historic event, for it was the first time in this Commonwealth that the growing tentacles of administrative bureaucracy could be pruned or eliminated. It provided, *inter alia,* that all administrative boards are terminated or abolished within six years hence. Its obvious purpose was to provide a review and evaluation of the agency by the legislature and to put upon itself a curb to prevent ineffectual and political procrastination.

Within the time window set in place, the General Assembly established mechanisms and procedures which would permit it to consider whether a commission (or board) would continue in its present form, be altered to meet current needs and desires, be reestablished completely in a form presently unforeseen, or be eliminated.

The mechanisms installed were businesslike, fiscally responsible and administratively sound. Through the procedures established, committees, obviously patterned after the General Assembly's standing committees, were to report their findings and recommendations to their respective bodies for full-time consideration and resolution.

Pursuing its objective to prevent parliamentary delays, the General Assembly prescribed a time for final consideration which, in its wisdom, recognized the customary delays brought on by election day, the subsequent holiday season, and adjournment.

Accordingly, it set the first session day of November for debate and vote.

Anticipating a deadlock, such as occurred in this case (PLCB), and an irrational, absurd result should there be an immediate decimation of the PLCB's authority and duties, the Assembly provided for a winding up of affairs for the six-month period. This would ensure an orderly administrative distribution of authorities, duties and responsibilities.

However, lest all valuable work and recommendations by the review mechanism be in vain, there are provided two savings devices:

1. the Governor may submit to the General Assembly a petition for review of the termination, or

2. failing that, appropriate legislative action could avoid total closure June 30, 1987.

In this case (PLCB), every mechanism and procedural device of the Act was followed except final consideration by the Senate. Having failed to do so, the Senate by inaction ensured the effective date of termination to be December 31, 1986, and the commencement of the windup to follow immediately thereafter.

Unless the legislature is called upon by the Governor to consider a bill of reestablishment or on its own enacts appropriate legislation, June 30, 1987 will hear the death knell of this Commonwealth's control over the alcoholic beverage industry and all the attendant and related consequences.

Having found all constitutional safeguards were met, petitioner PLCB's contention to the contrary is without merit.

Having found that the Governor's Executive Order 1986-7 is without authority and contravenes the Sunset Act, we hold it to be null and void.

Therefore, this Chancellor will grant the PLCB's application for summary relief to the extent detailed above. Since the practical effect of this Order will afford the other petitioners the relief they sought, it is unnecessary to affirmatively act upon the other applications.

This Chancellor will also order that any appeal taken from this Order shall not act as a supersedeas.[14]

ORDER

. After argument and upon consideration of the PLCB's application for summary relief incident to its petition for review in the nature of a declaratory judgment and permanent injunction (No. 3481 C.D. 1986), said application is granted and summary relief is ordered as follows:

1. The PLCB has been sunsetted as of December 31, 1986, by the Act of December 22, 1981;

2. The PLCB, pursuant to its wind-up authority in Sections 6(f) and 9 of the Sunset Act, shall between January 1, 1987 and June 30, 1987, exercise only that power and authority granted to it under the Liquor Code which is consistent with its June 30, 1987 termination date. The PLCB actions during this period shall not be inconsistent with this Chancellor's opinion. As of June 30, 1987, all powers heretofore and herein declared shall expire, including the purchase and sale of alcoholic beverages;

3. The Governor's Executive Order 1986-7 is invalid; and

4. In the event any party within the scope of Pa. R.A.P. 1736(a) appeals from this Order, said appeal shall not operate as an automatic supersedeas pursuant to Pa. R.A.P. 1736(b).

The applications in the other dockets (Nos. 3467, 3534, 3535 and 3604 C.D. 1986) are not ruled upon since the Order entered above grants the remaining petitioners relief to the extent consistent with this Opinion and Order.

---

[14] Petitioners' counsel orally requested this Chancellor at the close of the hearing to strike any supersedeas granted pursuant to the Rules of Appellate Procedure pending appeal.