520 A.2d 922

John R. Rogers and Helen Rogers, his wife, Appellants *v.* Zoning Hearing Board of East Pikeland Township, Appellee.

Argued December 11, 1986, before Judges CRAIG and COLINS, and Senior Judge KALISH, sitting as a panel of three.

*Ronald F. Brien,* for appellants.

*John D. Snyder,* with him, *James E. McErlane, Lamb, Windle & McErlane, P.C.,* for appellee.

OPINION BY JUDGE CRAIG, February 4, 1987:

John R. Rogers and Helen Rogers, equitable owners of property in Chester County, appeal from an order of Court of Common Pleas of Chester County which affirmed a decision of the Zoning Hearing Board of East Pikeland Township denying their application for variances from dimensional requirements of the East Pikeland Township Ordinance, sought so that the landowners could erect a single modular dwelling on an undersized lot. We affirm.

Section 502 of the ordinance, requiring a minimum lot size of 25,000 square feet, also requires that the landowners maintain two side yards aggregating 40 feet, neither side yard being less than 15 feet, and that front and rear yards be at least 50 feet in depth.

The landowners' property, located in an R-2 residential district, is roughly trapezoidal in shape, with frontage of approximately 215 feet along the road right-of-way, a rear line just 80 feet in length, and a net lot area of 9853.3 square feet. Variances from the lot area and

yard requirements are needed because those dimensional requirements would prevent construction of the proposed modular dwelling measuring 68 feet by 21 feet, to be positioned with a rear yard of 15 feet and a front yard of 25 feet.

Because the common pleas court took no additional evidence, this court's scope of review is limited to determining whether the board abused its discretion or committed an error of law. The board's findings cannot be disturbed if they are supported by substantial evidence. *Falls Township v. Zoning Hearing Board of Falls Township*, 91 Pa. Commonwealth Ct. 551, 498 A.2d 13 (1985).

Although the board's decision in this case (which incorporated some findings from an earlier decision in the same case) tended to confuse the distinctions between findings of fact and conclusions of law, and to include some of each in the discussion portion of the decision, the board's reasons for rejecting the variances were as follows:

1. The applicants failed to demonstrate unnecessary hardship;

2. In view of the dimensions of the proposed dwelling, the variance requests sought more than the minimum needed for relief;

3. The conveyance history of the lot indicated that the hardship was self-inflicted;

4. The board's second conclusion of law was that the proposed dwelling "would be detrimental to the immediate neighborhood, and would detract from surrounding properties", *i.e.*, according to the board's discussion and discussion footnote, a home on the lot "would not be in keeping with the immediate neighborhood," and the need for filling, or for cuts and fills, would mean that "the appearance would be unattractive to neighboring properties"; and

5. The same conclusion stated that a single-family residence on the property would "subject the occupants of the lot to hazards of flooding", *i.e.*, as stated in the discussion, the board's own study of a topographical survey indicates that, when the stream traversing the front of the property overflows its banks, the overflow would flood the subject property.

The issue is whether the board had a legally sound basis for denying variances needed to allow the single-family dwelling—a permitted use—on the undersized lot. Starting with the matter of detriment, we examine each of the board's reasons in turn.

### Detriment to the Neighborhood

The board's conclusion that variances would result in construction of a single-family dwelling detrimental to the neighborhood is based primarily on findings that this proposed modular home would not be "in keeping" with the immediate neighborhood and that "the appearance would be unattractive to neighboring properties" as a result of necessary cuts and fills. Those purely aesthetic considerations, standing alone, do not constitute a valid basis for rejecting a request to erect a single-family home on an undersized lot in a district where such dwellings are permitted. *Medinger Appeal*, 377 Pa. 217, 104 A.2d 118 (1954).

No provision of the ordinance prohibits a modular type of structure, nor is there any provision prohibiting a dwelling which the board deems to be too small in size because of the smallness of the lot. Indeed, as noted below, the board offered, as another reason, the thesis that the proposed dwelling was too large in relation to the minimum-variance requirement.

Although a Conclusion of Law in the board's final decision states that the lot's occupants would be subject to "hazards of flooding," there is no substantial evidence to

support that proposition as a finding of fact. The third finding of the board's earlier decision—incorporated by reference into the ultimate opinion—states that a small stream along the property frontage "overflows its banks during heavy storm conditions." Discussion in that further opinion rests the idea of flooding upon the testimony of a witness who "indicated that the creek . . . flooded during storm conditions;" because that testimony obviously falls short with respect to establishing that the lot was subject to inundation, the board resorted to its own reading of elevations on an exhibit to "confirm" a prediction that the overflow would flood the lot before flooding the road.

Moreover, although the trial judge stated that the landowners' proposed dwelling would subject "nearby properties to flooding", there is nothing in the board's findings or in the record to support that finding.

## Self-Inflicted Hardship

The board determined that the landowners' hardship was self-inflicted because the lot, originally acquired to provide a water source for a farm on the other side of the road, was not sold when the farm was sold. Although hardship can be self-inflicted when a landowner leaves himself with an undersized lot in the face of lot-size minimums in the zoning ordinance, cases which have so held involved situations where the landowner sold *adjacent* portions of the property—*i.e.*, subdivided a larger parcel. *Grace Building Company v. Zoning Hearing Board of Upper Merion Township,* 38 Pa. Commonwealth Ct. 178, 392 A.2d 888 (1978), and *Volpe Appeal,* 384 Pa. 374, 121 A.2d 97 (1956). Here, the sale of the farm *across the road* did not affect the small size of this lot as it previously existed.

## Minimum Required for a Variance

Section 912(5) of the Pennsylvania Municipalities Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10912(5), requires that the variance, if granted, must be the minimum that will afford relief and will represent the least modification of the ordinance. In *Southland Corporation v. East Caln Township Zoning Hearing Board,* 45 Pa. Commonwealth Ct. 591, 405 A.2d 107 (1979), this court upheld a board's denial of a variance where the request was to construct the largest of three store designs because that proposal did not represent the minimum variance that would afford relief. Here, the landowners could reduce by ten feet the width of their proposed residence to comply with the minimum side yard requirements of the ordinance, although no proposal could satisfy the minimum lot area size.

This shortcoming of the proposal is sufficient to defeat the variance request.

## Use of Undersized Lot Existing Before Zoning

Before the trial court and before this court, but not before the board, the applicant raised a new issue, the claim of entitlement to use the lot, at least for a single-family dwelling, on the basis that the undersized lot existed as such before the adoption of any zoning imposing dimensional requirements.

Such a claim in a zoning case may stand upon three different theories, as follows:

1.  *No relief provision:* Where the zoning ordinance contains no express relief provision for pre-existing undersized lots, there may be entitlement to a variance to erect a permitted-use single-family dwelling in order to avoid complete unusability of the land. *Jacquelin v. Horsham Township,* 10 Pa. Commonwealth Ct. 473, 312 A.2d 124 (1973).

2. *Special exception:* Where the ordinance contains a special exception provision allowing an undersized lot to be used, use entitlement may be based on special exception approval, but only if the standards and guidelines conditioning the special exception are met. *Appeal of Dodge,* 43 Pa. Commonwealth Ct. 65, 402 A.2d 273 (1979).

3. *Absolute exemption:* The zoning ordinance may contain a provision giving absolute and unqualified permission for use of an undersized lot for a permitted use, provided only that the record shows that the undersized lot existed before the adoption of zoning.

In this case, there is no special exception in the ordinance relating to undersized lots. However, there is a provision making the third of the above approaches applicable. Section 1201 of the township's zoning ordinance reads as follows:

> For any use permitted in a District, a building may be erected or altered on any lot held in single and separate ownership on the effective date of this Ordinance which is not of the required minimum area or width or is of such unusual dimensions that the owner would have difficulty in providing the required open spaces for the District in which the lot is situated.

However, although the record seems to establish that the lot existed with its present dimensions as early as 1953, the landowners failed to pursue permission under section 1201 before the board and therefore did not establish whether or not any zoning restrictions existed at that time, either by way of direct evidence or by way of an explicit on-the-record request that the board take judicial notice of that crucial fact. The board decisions contain no finding on the point.

Because the landowners thus failed to establish a record necessary to raise the issue of nonconformance

before the board, we will not address that issue for the first time on appeal. *Hersh v. Zoning Hearing Board of Marlborough Township,* 90 Pa. Commonwealth Ct. 10, 493 A.2d 807 (1985).

Of course, because this case has not involved any adjudication of the possible applicability of section 1201, that approach may remain open for a subsequent application, if appropriate. Contrary to the view of the board here, the *Dodge* decision would not be controlling because that case involved a special exception provision containing standards conditioning the grant, a limitation not applicable to section 1201 here.

With respect to any application under section 1201, the absolute nature of that exemption means that the possibility of stream overflow also could not defeat the unqualified entitlement to erect a permitted-use dwelling on the lot, even though the township might have power, under a building code or other safety ordinances, to require the incorporation of proper safeguards.

However, because the landowners failed to satisfy the minimum-variance requirement, we must affirm the board's decision to deny their request.

ORDER

Now, February 4, 1987, the order of the Court of Common Pleas of Chester County, No. 84-01054, dated January 22, 1985, is affirmed.