# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Anthony F. Guy, | : |
| Appellant | : |
| | : No. 1585 C.D. 2024 |
| v. | : |
| | : Submitted: March 3, 2026 |
| Zoning Hearing Board of the | : |
| Borough of Sewickley and | : |
| Swallow Point Ventures, LLC | : |

BEFORE:   HONORABLE LORI A. DUMAS, Judge
          HONORABLE MATTHEW S. WOLF, Judge
          HONORABLE MARY HANNAH LEAVITT, Senior Judge

## *OPINION NOT REPORTED*

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                                        **FILED:  April 6, 2026**

Anthony F. Guy (Guy) appeals from the order entered by the Court of Common Pleas of Allegheny County (Common Pleas) on October 28, 2024.  In that order, Common Pleas affirmed the decision issued by the Zoning Hearing Board of the Borough of Sewickley (Board) that granted a dimensional variance application (Application) filed by Swallow Point Ventures, LLC (Swallow Point).  Upon review, we vacate Common Pleas' order and remand this matter for further proceedings.

## I. BACKGROUND[1]

Swallow Point owns a residentially zoned, 5,837-square-foot property (Property) in the Borough, upon which is situated an abandoned single-family

---

[1] We draw the substance of this section from the Board's Findings of Fact, Conclusions of Law, and Decision (Decision), which was issued on March 22, 2024.  *See generally* Decision, 3/22/2024.

residence that was substantially destroyed and rendered uninhabitable by a fire. The Property has two front yards that abut public streets, but no rear yard, and is located on a road that does not provide much room for street parking. The dimensions of the Property are narrow, and the topography contains steep slopes, with one of the front yards being at a lower elevation than the abandoned residence. The lower front yard contains a garage foundation, but no garage structure. The Property is a lawful nonconforming parcel, with regard to minimum lot area, minimum lot width, minimum setback distance, and the presence of the garage foundation in the lower front yard.

In January 2024, Swallow Point filed its Application with the Borough, in furtherance of its desire to build a new single-family home on the Property. Through the Application, Swallow Point requested four dimensional variances[2] to facilitate the construction of a single-story, two-car garage in the Property's upper front yard, which would be connected to the new home's main level and would have doors that faced the street. *See* Bd. Hr'g Tr., 2/6/24, at 13-20. The Board then held a public hearing on February 6, 2024, and granted the Application on the following day. Guy, who owns two nearby properties and had opposed the Application at the Board's hearing, then appealed the Board's order to Common Pleas, which took no

---

[2] Swallow Point sought relief from Sections 330-408.A.(5), 330-1002.F.(1)-(2)(a), and 330-1202.A. of the Borough's Zoning Ordinance. *See generally* Official Zoning Ordinance of the Borough of Sewickley, Allegheny County, Pa., *as amended* (2011). These provisions collectively bar off-street parking spaces in the front yards of residentially zoned lots; prohibit the construction of private garages in front yards and in locations closer to the front lot line than a property's principle structure; mandate that the doors of garages for single-family homes face a secondary street or alleyway; and require owners of nonconforming lots to obtain variances to the extent that proposed development is not in compliance with the relevant lot area, width, and setback requirements. Zoning Ordinance §§ 330-408.A.(5), 330-1002.F.(1)-(2)(a), and 330-1202.A.

additional evidence and subsequently affirmed the Board in full. This appeal to our Court then followed shortly thereafter.

## II. DISCUSSION[3]

Guy presents several arguments for our consideration, through which he asserts that the Board abused its discretion and committed errors of law by granting the Application. We summarize those arguments as follows: first, Guy asserts that Swallow Point's inability to construct its desired garage in a Zoning Ordinance-compliant manner does not constitute an unnecessary hardship; second, he maintains that any hardship was created by Swallow Point, because it was aware of the Property's parking limitations when it purchased the Property; third, Guy contends that the Board's determination that the proposed garage will not alter the essential character of the neighborhood or have a detrimental effect upon public welfare is not supported by any record evidence; finally, he states that the record is devoid of evidence that supports the Board's determination that the granted variances will provide the minimum relief necessary. Guy's Br. at 15-26.

Per the Borough's Zoning Ordinance, an applicant must prove the following in order to establish its entitlement to a requested variance:

> (1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hardship is due to such conditions and not the circumstances or

---

[3] "In a land use appeal, where the trial court does not take additional evidence, this Court's . . . review is limited to determining whether the local [agency] committed an error of law or an abuse of discretion. . . . The [agency] abuses its discretion when its findings of fact are not supported by substantial evidence." *Residents Against Matrix v. Lower Makefield Twp.*, 845 A.2d 908, 910 (Pa. Cmwlth. 2004) (cleaned up). "Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Eureka Stone Quarry, Inc. v. Dep't of Env't Prot.*, 957 A.2d 337, 344 (Pa. Cmwlth. 2008) (cleaned up).

3

conditions generally created by the provisions of this chapter in the neighborhood or district in which the property is located.

(2) That, because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of this chapter and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(3) That such unnecessary hardship has not been created by the [applicant].

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

Zoning Ordinance § 330-1305.B.[4]

We view this language through the lens of our well-established case law in this realm. "A variance . . . is issued by a zoning hearing board [and] is not provided for in the zoning ordinance[; instead, a variance affords] permission to deviate from the ordinance in either the dimensions of the improvements made to the land or in the use of the land." *Nowicki v. Zoning Hr'g Bd. of Borough of Monaca*, 91 A.3d 287, 291 (Pa. Cmwlth. 2014). With regard to dimensional variances in particular, they "involve[] a request to adjust zoning regulations to use [ ] property in a manner consistent with [those] regulations," in contrast to use variances, which "involve[] a request to use property in a manner that is wholly outside zoning regulations." *Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hr'g Bd.*,

---

[4] This variance standard is essentially identical to the one articulated in Section 910.2(a) of the Pennsylvania Municipalities Planning Code. *See* Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2(a).

83 A.3d 488, 520 (Pa. Cmwlth. 2014). Dimensional variances consequently pose a lesser potential threat to the public interest, as they do not create the same degree of deviation from zoning regulations as their brethren. *Bawa Muhaiyaddeen Fellowship v. Phila. Zoning Bd. of Adjustment*, 19 A.3d 36, 40 (Pa. Cmwlth. 2011). In keeping with this, "[t]he quantum of proof required to establish unnecessary hardship is indeed lesser when a dimensional variance, as opposed to a use variance, is sought." *Hertzberg v. Zoning Bd. of Adjustment of City of Pittsburgh*, 721 A.2d 43, 48 (Pa. 1998). "[C]ourts may consider multiple factors" when reviewing a decision that granted a dimensional variance, "including the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building [or property] into strict compliance with the zoning requirements[,] and the characteristics of the surrounding neighborhood." *Id.*

However, this does not mean that "dimensional requirements . . . [are] 'free-fire zones' for which variances could be granted when the party seeking the variance merely articulated a reason that it would be financially 'hurt' if it could not do what it wanted to do with the property[.]" *Soc'y Created to Reduce Urban Blight v. Zoning Bd. of Adjustment of City of Phila.*, 771 A.2d 874, 877 (Pa. Cmwlth. 2001). "Although a property owner is not required to show that his or her property is valueless unless a variance is granted, mere economic hardship will not[, in and] of itself[,] justify a grant of a variance." *Marshall v. City of Phila.*, 97 A.3d 323, 330 (Pa. 2014) (some punctuation omitted). Nor are "personal . . . considerations . . . sufficient grounds upon which to base the grant of a variance." *Borough of Latrobe v. Sweeney*, 331 A.2d 925, 927 (Pa. Cmwlth. 1975). "A variance, whether labeled dimensional or use, is appropriate 'only where the *property*, not the person, is subject to hardship.'" *Yeager v. Zoning Hr'g Bd. of City of Allentown*, 779 A.2d 595, 598

(Pa. Cmwlth. 2001) (quoting *Szmigiel v. Kranker*, 298 A.2d 629, 631 (Pa. Cmwlth. 1972)) (emphasis in original). The onus is thus on the applicant to firmly establish that "a substantial burden . . . attend[s] *all* dimensionally compliant uses of the property, not just the particular use [that the applicant has chosen]." *Id.* (emphasis in original). Accordingly, our appellate courts have "consistently reject[ed] requests for dimensional variances where proof of hardship is lacking. Where no hardship is shown, or where the asserted hardship amounts to a landowner's desire to [develop a property as they see fit], the unnecessary hardship criterion required to obtain a variance is not satisfied[.]" *Soc'y Hill Civic Ass'n v. Phila. Zoning Bd. of Adjustment*, 42 A.3d 1178, 1187 (Pa. Cmwlth. 2012); *accord Singer v. Phila. Zoning Bd. of Adjustment*, 29 A.3d 144, 150 (Pa. Cmwlth. 2011).

We are largely unable to address the merits of Guy's arguments, due to his failure to properly raise the majority of them when this matter was before the Board. It is beyond cavil that "a party who fails to raise an issue before a municipal zoning hearing board is precluded from doing so for the first time on appeal." *Harrisburg Gardens, Inc. v. Susquehanna Twp. Zoning Hr'g Bd.*, 981 A.2d 405, 415 (Pa. Cmwlth. 2009). In this instance, the relevant portions of the Board's hearing transcript read as follows:

> MR. GUY: Hi. My name is Anthony Guy. I've owned property at 14 Orchard Terrace, 7 and 742 Orchard Terrace [sic]. Both ends of that. My largest concern is building the garage. You build a garage, it's an aesthetic thing. But are you going to do enough engineering to guarantee me that I suffer no harm when that goes over the hill? Those are my concerns. You want to build a house on its current and existing footprint, build it, have a great day, enjoy yourselves. But there have been three houses slide off that hill in my lifetime. And I've been a resident -- well, since she brought me here.
>
> MS. GUY: With pleasure.

6

MR. GUY: Most days, right. And those are my largest concerns. The house that was adjacent to it slid and that did go into Mr. Lewis' backyard. There is one catty-corner from the one that's the existing structure, next to it, that went over the hill. And there was one on a piece of property that I currently own. That went over the hill and they tore that one down when I was a kid. Those are my only concerns. If those concerns are met and they can guarantee me that I won't be injured or damaged by this move, have a wonderful day, build yourself a beautiful house. And they're wonderful pictures. Thank you very much.

. . . .

[BOARD] CHAIRMAN DELANEY: Okay. All right. We are going to -- unless –

MS. MUELLER: Is this something new to add?

MR. GUY: Yes.

MS. MUELLER [(BOARD SOLICITOR)]: Is it something that hasn't been said yet?

MR. GUY: Yes. My question to you --

COURT REPORTER: I need your name again, please.

MR. GUY: Tony Guy. My question to you is: Will you do soil and core samples for all of this?

MR. MOTZNIK [(BOROUGH ZONING/BUILDING CODE OFFICER)]: That is part of the natural resource protection overlay.

MR. GUY: Correct.

MR. MOTZNIK: Yeah.

MR. GUY: And I don't believe there is a rock under that house.

CHAIRMAN DELANEY: All right. Thank you.

Bd. Hr'g Tr., 2/6/24, at 26-27, 38-39. These exchanges clearly show that Guy's objections regarding Swallow Point's dimensional variance application were based solely upon his concern that the proposed garage location was unsafe, due to the Property's topography, and his fear that the garage would eventually become

7

unmoored from its foundation and somehow damage his nearby property or properties. In other words, the objections Guy raised at the Board's hearing are best described as assertions that the requested variances would be detrimental to the public welfare, but nothing more than that. Accordingly, we conclude that Guy has waived his arguments regarding the putative existence of unnecessary hardship, the alleged self-created nature of the hardship, and whether the granted dimensional variances provide the minimum necessary variance and least modification possible to afford relief.[5] *Harrisburg Gardens*, 981 A.2d at 415.[6]

Finally, we are unable to properly address Guy's argument regarding the proposed garage's impact upon the public welfare, because the Board failed to make sufficient findings of fact and conclusions of law regarding that question. It is true that the Board made specific, relevant findings of fact, in which it summarized the testimony offered at the hearing about the safety of placing the garage in the proposed location. *See* Decision, Findings of Fact, ¶¶28-37 (summarizing safety-related testimony offered by Mike Gwin, Swallow Point's project architect, as well

---

[5] Guy also asserts that the proposed garage will alter the essential character of the neighborhood and be detrimental to the public welfare, due to the "substantial detrimental impact [it will allegedly have] on the aesthetics of the neighborhood and on parking in the neighborhood." Guy's Br. at 24. These arguments are also waived, due to Guy's failure to raise them before the Board. *Harrisburg Gardens*, 981 A.2d at 415. Furthermore, we note that purely aesthetic concerns, without more, cannot constitute a legally valid basis for denying a variance application. *See Rogers v. Zoning Hr'g Bd. of E. Pikeland Twp.*, 520 A.2d 922, 924 (Pa. Cmwlth. 1987); *accord Heck v. Zoning Hr'g Bd. for Harvey's Lake Borough*, 397 A.2d 15, 19 (Pa. Cmwlth. 1979) (cleaned up) ("While this Court has observed that the concept of general welfare of a community in zoning matters includes a consideration of aesthetics, we have also declared that aesthetics alone cannot support a determination that the general welfare of a community would be adversely affected by the granting of a special exception.").

[6] Common Pleas thus erred by reaching the merits of these arguments in its opinion. *See* Common Pleas Op., 10/28/24, at 3-6. Common Pleas' error is ultimately harmless, however, as our waiver determination has the same practical effect upon Guy's appeal as Common Pleas' disposition of those arguments.

as by several members of the Guy family). However, the Board did not make any relevant credibility determinations or offer any findings or conclusions about Guy's specific safety concerns. Instead, the Board merely concluded, in relevant part: "[T]he variances will not alter the essential character of the district or neighborhood. Without limitation, numerous other properties in the neighborhood and community, generally, have parking pads and/or garages located in their front yards, many of which have vehicular doors facing a street." *Id.*, Conclusions of Law, ¶74. Given this, we cannot determine at this juncture whether the Board properly granted the Application.

## III. CONCLUSION

In accordance with the foregoing analysis, we vacate Common Pleas October 28, 2024 order and remand this matter, with instructions that Common Pleas further remand this matter to the Board. The Board shall issue an amended decision, which must include findings of fact and conclusions of law based upon the existing record, within 60 days of receiving Common Pleas' remand order. Therein, the Board must specifically address the potential that the proposed garage may eventually detach from its moorings and damage nearby properties, as well as whether the requested variances will consequently be detrimental to the public welfare. *See Domeisen v. Zoning Hr'g Bd., O'Hara Twp.*, 814 A.2d 851, 860 (Pa. Cmwlth. 2003) ("A zoning board has a duty to make essential findings of fact sufficient to support its conclusions. In the absence of such findings, the court may remand the matter to the board so that it can fulfill that duty.").

**LORI A. DUMAS, Judge**

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthony F. Guy,              :
           Appellant        :
                                :    No. 1585 C.D. 2024
           v.                :
                                :
Zoning Hearing Board of the    :
Borough of Sewickley and      :
Swallow Point Ventures, LLC    :

# O R D E R

AND NOW, this 6th day of April, 2026, it is hereby ORDERED:

1. The Court of Common Pleas of Allegheny County's (Common Pleas) order, entered on October 28, 2024, is VACATED;

2. This matter is REMANDED to Common Pleas, with instructions that Common Pleas further remand this matter to the Zoning Hearing Board of the Borough of Sewickley (Board);

3. The Board shall issue an amended decision, which must include findings of fact and conclusions of law based upon the existing record, within 60 days of receiving Common Pleas' remand order. Therein, the Board must specifically address the potential that Swallow Point Ventures, LLC's (Swallow Point) proposed garage may eventually detach from its moorings and damage nearby properties, as well as whether Swallow Point's requested dimensional variances will consequently be detrimental to the public welfare.

Jurisdiction relinquished.

_____
**LORI A. DUMAS, Judge**